### FT. WORTH GLASS & SAND CO. v. S. R. SMYTHE CO.

#### Decided April 28, 1910.

**Foreign Corporation—Permit to Do Business.**

A corporation of another State, under a contract made outside of Texas, erected in this State, as part of the plant of a glass manufacturing company, three gas producers, the producers and part of the materials for setting them in place being manufactured or bought by it outside of and shipped into Texas, but materials to the amount of $155, and labor to the amount of $917, bought or employed in the State, being used in the work, which occupied five weeks' time under the direction of an agent in charge and remaining in the State for that time and purpose, the entire contract price for work and material being $5,400. Held:

(1) The undertaking constituted a doing business by the corporation in the State of Texas, prohibited without its obtaining permit so to do (Rev. Stats., art. 745).

(2) Having obtained no permit to do the business, the corporation could not sue to recover for performance or enforce a lien for work and materials on the property of the glass company.

(3) Though the contract was made outside the State of Texas, the performance was within it and came within the prohibition (Security Co. v. Panhandle Natl. Bank, 93 Texas, 575, and Lakeview Land Co. v. San Antonio Trac. Co., 95 Texas, 252, distinguished).

(4) The contract was more than a mere selling in Texas by the foreign corporation of its manufactured product, and did not constitute such interstate commerce as to be beyond the operation of the State statute. (Cooper Mfg. Co. v. Ferguson, 113 U. S., 737, distinguished.)

Appeal from the District Court of Tarrant County. Tried below before Hon. R. H. Buck.

*R. M. Rowland,* for appellant.

*Smith & Storer,* for appellee.

No briefs reached the Reporter.

LEVY, ASSOCIATE JUSTICE.—The appellant was desirous of erecting a glass factory upon its property situated near Fort Worth, Texas. It contracted in writing with Dave Woolverton to construct, complete and equip a factory to manufacture glass on the property mentioned, according to the specifications made and furnished by Woolverton, agreeing to pay Woolverton therefor the sum of $38,000. By the terms of the contract Woolverton was to furnish all material, machinery,

labor and tools to erect, complete, equip and deliver the factory ready for operation.   After execution of the contract Woolverton began the erection of the plant, and thereafter made the following written contract with appellee:

"The S. R. Smythe Company, Pittsburg, Pa., Jan. 9th, 1907.

"Dave Woolverton, Esq., R. R. 5, Box 87, Fort Worth, Texas.

"PROPOSAL for three (3) Gas Producers with Downtakes.

"Dear Sir:

"We propose to build for you at the plant of the Fort Worth Glass Company, Ft. Worth, Texas, in close proximity to railroad siding for the convenient unloading of cars containing our materials, three (3) center blower water seal gas producers with downtakes and cut-off for each, which will consist of the following parts:   (Here follows description and dimensions).

"The downtakes will be made of steel plates, each provided with two doors and frames, sand damper frame and sand damper, all complete, and lined with 2½ inch of No. 2 fire brick, and will furnish all material, do all work and build the same complete for the sum of Fifty-Four Hundred ($5,400) Dollars for the three, all of which will be subject to the exceptions and conditions hereinafter enumerated.

### Exceptions and Conditions.

"Excavations:   All the necessary excavations are to be dug by you and the ground prepared ready for us to erect.

"Foundations:   Any necessary concrete foundations that may be necessary below our starting points are to be furnished and put in by you.

"Exceptions:   Building, coal platform, steam or water pipes, valves and fittings, tools and water boshes, gas connections leading from the bottom of downtakes to the furnaces, all of which are not included in this proposal, and same are to be furnished and work done upon these parts by you.

"Time to Build:   We can build the hereinbefore three gas producers with their downtakes in from six to eight weeks from the date of the order based upon the present promise of delivery of materials into the construction thereof, but in all cases the time for completion is based contingent upon strikes, accidents, delays or causes beyond our control.

"Guarantee:   We guarantee that the hereinbefore specified three gas producers with their downtakes will be constructed in a durable, substantial and proper manner, and nothing but the best of materials will be used in the construction throughout.

"Terms of Payment:   The terms of payment are to be upon the following basis: fifty percent (50%) of the value of the materials shipped against bill of lading upon the day of presentation, thirty-five percent (35%) after receipt of material and during the construction of said three producers with downtakes, the whole by the time we have said three producers and downtakes completed, and the balance of fifteen percent (15%) to be paid in two equal installments; seven and one-half percent in thirty days, and seven and one-half percent in sixty days dating from the day of completion.

"Material Left Over: After completing our contract we shall possibly have a moderate amount of brick, clay and cement left over, which is customary, and which we will kindly ask you to take off our hands, we invoicing the same to you at our cost price plus the cost of unloading.

"Freight: It is also customary, and we shall ask you to pay the freight upon our shipments, charging same against our contract as cash paid on account of same, and upon receipt of original vouchers from you covering said freight charges we shall forward you our receipt covering the same.

"Trusting to be favored with your valued order when we will endeavor to give you satisfaction as we do all our patrons, we are,

"Yours truly,
"The S. R. Smythe Company,
"(Signed) H. E. Smythe, President.

"We accept the above proposal and agree to all the terms and conditions therein set forth, this 19th day of January, 1907.

"(Signed) Dave Woolverton."

The contract was fully performed by the appellee, and $2,750 of the contract price of $5,400 was paid it by the appellant on orders from Woolverton, the contractor. The balance of the contract price, it appears, was not paid. The appellee, claiming that appellant was responsible for the debt owing it and that it had a mechanic's lien on the property of the appellant, brought suit against the appellant for the balance of the contract price mentioned.

The case was tried before the court without a jury, and a judgment was entered for appellee foreclosing a mechanic's lien on the property but declining to render personal judgment against appellant.

The court made findings, and the evidence on the findings here stated is without conflict and in fact is admitted. The appellant is a Texas corporation and has its domicile in the State of Texas. Dave Woolverton is a resident of Texas. The appellee is a corporation chartered under the laws of the State of Pennsylvania, having its place of business in the city of Pittsburg in said State. The contract involved in this suit was solicited entirely by Woolverton by correspondence from him in Texas addressed to appellee at its office in Pittsburg, Pennsylvania, and all the negotiations leading up to the contract were conducted by the United States mail between Woolverton in Texas and appellee in Pennsylvania, except a part of the negotiations which took place over telephone between Woolverton while in St. Louis and appellee in Pennsylvania. The contract was made in the State of Pennsylvania. The work performed by appellee in Texas, in compliance with the contract, consisted of the building and erection of three gas producers with downtakes into the plant of appellant. It required five weeks' time to do this, and appellee, in doing the work, employed labor in Texas, paying therefor the sum of $917, and purchased in Texas certain material such as red brick, sand, lime and cement, of the value of $155, and paying therefor. The three gas producers with downtakes were manufactured in States other than Texas and were shipped into Texas

by appellee, and all other material except that stated above was shipped from other States into Texas by appellee. The work performed by appellee in Texas was done by it through an agent in charge, who during the entire time, remained in the State of Texas. It was admitted that appellee had never complied with art. 745, Rev. Stats., and had never obtained a permit from the Secretary of State to transact business in the State of Texas.

*After stating the case.*—We have concluded that appellant's tenth assignment of error should be sustained, and this conclusion renders unnecessary the consideration of the other assignments or further statement of the case. By this assignment it is contended that the court erred in holding that appellee could maintain this suit in the courts of Texas without having obtained a permit from the Secretary of State to do business in the State, it conclusively appearing that appellee was a foreign corporation, never having obtained a permit to do business in the State, and it transacting business in the State under a contract requiring it as a corporation to do business in Texas. The petition of appellee alleged that it had never solicited or transacted business in Texas, and that the contract alleged and performance thereof constituted commerce between the States and was not subject to the control of the Texas statutes. The appellant plead in bar that the appellee, in the performance of the contract, was engaged in doing business in Texas in violation of its laws in not filing a copy of its articles of incorporation with the Secretary of State and obtaining a permit to do business in the State. The facts as before set out in respect to the assignment are undisputed. The undisputed facts show, we think, that the transaction involved the performance in Texas, by appellee in its corporate capacity, of a contract for the building and construction of a material portion of a manufacturing plant being erected in the State, and that the prosecution of the transaction in Texas by appellee as a corporation constituted transacting business in the State within the terms of art. 745, Rev. Stats. Metal Fireproofing Co. v. Beilharz, 88 S. W., 512. By the terms of the contract appellee obligated itself, as a corporation, "to build for you at the plant of the Fort Worth Glass Company, Ft. Worth, Texas, in close proximity to railroad siding for the convenient unloading of cars containing our materials, three (3) center blower water seal gas producers with downtakes and cut-off for each," and further, to "furnish all material, do all work and build the same complete for the sum of Fifty-Four Hundred ($5,400) Dollars for the three." And obligated itself to "build the hereinbefore three gas producers with their downtakes in from six to eight weeks from the date of the order," conditioned on the contingency of strikes and accidents. And stipulated to "guarantee that the hereinbefore specified three gas producers with their downtakes will be constructed in a durable, substantial and proper manner, and nothing but the best of materials will be used in the construction throughout." And a part of the contract price was not to be paid until "sixty days dating from the day of completion." Manifestly the appellee, as a corporation, contracted to build and complete the work undertaken, and agreed to furnish such material and labor as was necessary for the completion.

It was not a sale of material and pay therefor shipped from another State. The facts show that appellee, as a corporation, acting through an agent in charge, performed its contract to build and complete the three gas producers in Fort Worth, Texas, and that it required five weeks to do this, and that appellee, in doing the work, employed and paid labor and purchased some material in Texas, and that the other material was manufactured in other States and shipped into Texas by appellee. Appellee insists, that the performance of the contract was one transaction, and that one transaction is not transacting business within this State within the meaning of the statute. The statute requires a permit of foreign corporations "desiring to transact business in this State." Clearly, a foreign corporation desires to and does transact business in Texas when it undertakes, in its corporate capacity, "to build" and "complete," furnishing all material and labor, and receiving a lump sum in pay therefor, gas producers "at the plant of the Fort Worth Glass Company, Fort Worth, Texas." To "build" and "complete" the work it took five weeks, and to effect it, labor was employed in Texas and material purchased in Texas. Evidently a desire to transact business in Texas is evidenced. It was one transaction in the sense of one contract, to be sure. But if the statute should be so construed as contended for, the question of commerce between the States not being involved, then a contract by a foreign corporation to erect and complete a building in this State, regardless of the time it took or the magnitude of the work, would not be required to comply with the statute. If a contract requiring five weeks to complete is not within its terms, then a contract requiring two years to complete is likewise not within the terms of the statute. The purpose of the statute would not be accomplished by such construction. During the period of time engaged in the work, whether five weeks or longer, it might fail to pay its labor or for material furnished, or it might negligently maim its employes; and could they bring it to the bar of a Texas court? It is the fact that business is to be transacted in the State that makes the permit necessary to be obtained. If a contract requires the performance of the work to be done in Texas a permit is required. The performance of the contract, as is seen, required and involved work by appellee of some magnitude and duration in Texas, and involved numerous transactions between many people and appellee in Texas. The authorities cited apply to cases involving commerce between the States, and have no application to the above ruling, as commerce between the States is not here involved.

Appellee contends that the contract, having been made outside of Texas, could be performed in the State without violation of the Statute. We do not think the contention can be sustained in the evidence. It is true the contract was made outside of the State, but it was a contract to be performed in the State of Texas. It expressly obligated appellee to "build for you at the plant of the Forth Worth Glass Company, Ft. Worth, Texas," and to "build the same complete," furnishing all material and labor necessary, the gas producers in the plant then in erection. It was not business to be performed outside of the State. We are cited by appellee to the cases of Security

Co. v. Panhandle Natl. Bank, 93 Texas, 575, 57 S. W., 22, and Lakeview Land Co. v. San Antonio Traction Co., 95 Texas, 252, 66 S. W., 766. Neither case do we think applicable to the instant one.

Appellee further contends that the transaction was interstate commerce, being virtually a sale of the gas producers, and therefore the suit could be maintained in the court. We do not think the contract sued on can be properly or reasonably construed as a contract of sale. It does not appear in the record that appellee was a manufacturer of gas producers and selling them as manufactured products. The court finds "that said three gas producers with downtakes were manufactured in States other than Texas and were shipped into Texas by plaintiff," and he further finds "that all material except the said $155 worth as aforesaid was shipped from other States." The obligation and evidence show that appellee took, executed and performed a contract to furnish and build complete the gas producers in Texas, and shipped the material for the purpose into the State, and employed the necessary labor and purchased some material in Texas. Such contractual realtions between citizens of different States is not included in commerce between the States, as to be beyond the powers of a State to regulate and control. Not engaged in interstate commerce, but having contractual relations that involved transacting business in the State of Texas, the appellee, a foreign corporation, was required by the laws of Texas to comply with its laws. This, under the undisputed, even admitted, proof it did not do.

We have considered all the cases cited by appellee, and do not think they have application to the instant case. The facts in the case of Cooper Mfg. Co. v. Ferguson, 113 U. S., 727 (28 L. ed. 1137) cited show that the Ohio corporation agreed to build and deliver on the cars in Ohio, certain machinery, and the other party to pay the price stipulated. This was all. Clearly this was a single transaction of commerce between the States. The instant case is quite dissimilar.

The judgment was ordered reversed and here rendered in favor of appellant, with all costs.

*Reversed and rendered.*

Writ of error granted. Judgment modified. S. R. Smythe Co. v. Ft. Worth G. & S. Co., 142 S. W., 1162.