UNITED STATES CONSTRUCTION COMPANY *v.* HAMILTON NATIONAL BANK OF FORT WAYNE, INDIANA, ET AL.

[No. 10,305.   Filed April 6, 1920.]

1. CORPORATIONS.—*Foreign Corporations.—Statutory Requirements.—When Contracts Void.*—Section 4085 *et seq.* Burns 1914, Acts 1907 p. 286, regulating the admission of certain foreign corporations to do business in Indiana, contains a section prescribing a penalty for neglect or failure to comply with the act, and this renders a contract made in violation thereof void. p. 155.

2. COMMERCE.—*Corporations.—Installation of Sprinkler System by Foreign Corporation Not Interstate Commerce.*—The contract for, and the installation of a sprinkler system, by a foreign construction company, in a domestic manufacturing plant, did not constitute interstate commerce, but was the transaction of local business in the state. p. 158.

3. CORPORATIONS.—*Foreign Corporations.—Failure to Comply With Statutory Requirements.—Right of Protection.*—A contract of a foreign corporation for the transaction of local business in the state, in violation of §4085 *et seq.* Burns 1914, Acts 1907 p. 286, because of failure to comply with the requirements therein prescribed for admission of the corporation to

do business in the state, is unlawful, and not entitled to the protection of the courts of the state. p. 158.

4. FIXTURES.—*Mortgages.*—*Estoppel.*—A construction company which installed a sprinkler system at a manufacturing plant in such a manner that it became a visible fixture and permanent part of the plant, is estopped, as against a subsequent mortgagee of the plant acting without any knowledge of any claim of title or lien by the construction company and upon appearances created by it, from asserting any such claim. p. 158.

From Allen Circuit Court; *J. W. Eggeman,* Judge.

Action by the United States Construction Company against the Hamilton National Bank of Fort Wayne, Indiana, and others. From judgment for defendants, the plaintiff appeals. *Affirmed.*

*T. E. Ellison* and *Chatty Bros. & Flatau,* for appellant.

*Vesey & Vesey* and *Barrett, Morris & Hoffman,* for appellees.

NICHOLS, C. J.—The complaint in this action was in two paragraphs, the first averring wrongful possession and conversion of a fire extinguishing apparatus and sprinkling system, located on certain real estate in the city of Fort Wayne, Indiana, to appellant's damage in the sum of $12,000, with a prayer for recovery of that amount, and the second paragraph alleging substantially the same facts with a prayer for recovery of possession or of $12,000 damages. Appellees' answer was in three paragraphs: The first being a general denial; the second pleading an estoppel to the effect that by appellant's act the sprinkler system was so attached to and built into the building on said real estate as to become a part thereof, and that appellees had no knowledge of appellant's claim at the time they accepted a mortgage interest in said real estate; and the third alleging appellant to be a foreign corporation which had not complied with the laws of Indiana relative to doing busi-

NOVEMBER TERM, 1919.     151

U. S. Const. Co. *v.* Hamilton Nat. Bank—73 Ind. App. 149.

ness in the state, and that, therefore, it could not maintain its action. Appellant's demurrer was overruled to the second and third paragraphs of answer. There was a trial, and judgment for appellees. After motion for a new trial, which was overruled, this appeal.

The facts that must control the decision of this case, both as to the ruling on the demurrers to the answers, and as to the motion for a new trial, briefly stated, are that: The Kerr Murray Manufacturing Company was the owner and in possession of certain real estate, with the buildings thereon, in the city of Fort Wayne, Indiana, on September 7, 1911, and for many years prior thereto, and continued to own the same until May 27, 1912, when, by due course of law, a receiver was appointed for it and its property in the Allen Circuit Court. Appellant is a foreign corporation for profit, organized for the purpose, and with the power, of selling, constructing, erecting and leasing sprinkler systems. It never complied with the provisions of the act of March 9, 1907, §4085 *et seq.* Burns 1914, in relation to foreign corporations. On December 26, 1908, appellant entered into a written agreement with said manufacturing company to equip its factory buildings with the General Fire Extinguisher Company's system of automatic sprinklers, furnishing all labor and material therefor, and to keep the sprinkler equipment in good order during the term of the agreement, for which said manufacturing company was to pay $16,411 in four annual payments. Such agreement is called a lease, but it expressly provides that, upon full payment of said annual installments, the sprinkler should become the property of the manufacturing company, constituting a part of its plant, and that the instrument should then be released of record. The sprinkler system was to remain the property of appellant, and upon failure of said company to pay, appellant might take out and remove

152    APPELLATE COURT OF INDIANA,

U. S. Const. Co. *v.* Hamilton Nat. Bank—73 Ind. App. 149.

said equipment, and it might also collect the annual installments the same as any other mature obligation. In case the company should cease to operate the premises, or should become insolvent, or the premises should be destroyed otherwise than by fire, the company should remain liable the same as if the event had not occurred. No provision was made for the return of any payments made; and $9,900 was paid on the contract, none of which was ever repaid or tendered back. Specifications described the various kinds of work and material, including a 40,000-gallon steel gravity tank upon a seventy-five-foot tower, and also including the excavating, filling back trenches, carpentry, masonry, and other work to be done at the site of the factory buildings. This instrument was never recorded. On the same day the contract was sublet to the General Fire Extinguisher Company, except the coal, coke and sandsheds, the earth, carpenter and masonry work, including all foundations, supports, staging, and inclosures, which was done by appellant. By the specifications the owner was to furnish the 40,000-gallon tank and seventy-five-foot tower and box tank riser valves and hydrants; and, on December 5, 1908, appellant contracted with the manufacturing company to erect the tank and tower, including foundation and supports, to box the tank riser, to excavate and back fill the trenches, and to do all necessary carpenter work for $2,500, to be paid by appellant. The material to be used by appellant was shipped from Ohio in several carload lots, and consisted of several thousand separate and distinct parts which were fabricated and constructed into a sprinkler system, in Fort Wayne, and for the work of which six to eight men were engaged for from two and one-half to three months. The large pipes were laid underground from four to five feet beneath the surface and under the foundations of the buildings, and under the concrete floors, attached to the

six-inch tank riser and to the mains of the city works. The small distributing pipes were firmly attached to the walls and rafters by bolts, screws, and metal hangers. The large controlling valves were firmly set upon heavy concrete foundations built for them and firmly attached thereto and were inclosed in separate rooms made therefor. The tank and the tower were built by the manufacturing company from its own material then on hand at its own plant, as was also the boxing and the tank riser; the inclosing of the large valves by wooden partitions, and the excavating and filling of the trenches were done by its employes. The tower was supported by a base eight or ten feet in the ground, which, with a well eight feet square and six feet deep, with concrete walls and foundation, for the large controlling valve, was constructed by the manufacturing company. The sprinkler system was more firmly attached to the soil than the buildings themselves, was adapted to the use of the buildings, added value thereto, and appeared to all intents and purposes to be a permanent fixture and a part of the real estate. Appellant had a short time before constructed another sprinkler system in the city of Fort Wayne. On September 7, 1911, the manufacturing company executed a mortgage on said real estate and buildings to the Tri-State Loan and Trust Company, to secure an issue of 300 bonds of $1,000 each and, being then indebted to each of appellee banks in excess of $40,000, then due, each bank then extended the time of payment one year and increased their respective loans to $60,000, including the existing indebtedness, in consideration of the pledge to each of said banks of sixty-five of said bonds so secured by mortgage as aforesaid. The mortgage was duly recorded. Appellee banks extended the time of such payments and increased the loans without any knowledge of any claim or title, ownership or lien of the appellant in or to said sprinkler system or

any part thereof. This last statement is disputed, but the court by its general finding has so found, and we do not weigh the evidence. The receiver, so appointed as aforesaid, filed his petition to sell all of the property of the manufacturing company, alleging its insolvency and a necessity for such sale, to which petition said company and appellee banks were made parties, and the banks set up their claims against the company and their security, asking that the mortgage be declared a first lien on the property and on the proceeds of the sale, and that such proceeds be first applied to the payment of their claims. Judgment was rendered in favor of each of appellee banks in the sum of $65,000, the mortgage was decreed a first lien upon said real estate, buildings, fixtures and attachments thereto, and the same was ordered sold, and the proceeds to be applied pro rata to the bonds outstanding and secured by the mortgage. After due advertisement, the property was sold, July 21, 1913, to Charles H. Worden for the banks for $93,500, which was paid by the banks to the receiver. This sale was finally confirmed in *Cressler* v. *Tri-State Loan, etc., Co.* (1914), 182 Ind. 572, 107 N. E. 68. On the day of the sale appellant was on its own petition admitted as a party and filed its petition to remove the cause to the federal court and thereafter filed its cross-complaint, alleging that said manufacturing company was indebted to it in the sum of $6,511, as a balance due for the sprinkler system, that it was entitled to a preferential claim therefor and asking that it be declared a preferred creditor and paid in full and that its claim be paid out of the proceeds of the sale of the real estate upon which its sprinkler system was installed.

Section 4085 (Acts 1907 p. 286), *supra*, provides that: "Before any foreign corporation for profit shall be permitted or allowed to transact business or exercise any of its corporate powers in the State of Indiana,

* * * they shall be required to comply with the provisions of this act and shall be subject to all the regulations prescribed therein, as well as all other regulations, limitations and restrictions applying to corporations of like character organized under the laws of this state."

The provisions of the act to be complied with follow in subsequent sections with which appellant had not complied, among which is one making a failure to

1. comply therewith a misdemeanor. This renders the contract made in violation thereof void. *Sandage* v. *Studebaker Bros. Mfg. Co.* (1895), 142 Ind. 148, 41 N. E. 380, 34 L. R. A. 363, 51 Am. St. 165; Illinois, with a statute practically identical with ours, so holds. *United Lead Co.* v. *J. W. Reedy, etc., Co.* (1906), 222 Ill. 199, 78 N. E. 567, 6 Ann. Cas. 637.

Appellant contends that its business of equipping the manufacturing plant with the sprinkler was interstate commerce, and that therefore it did not constitute a violation of the section quoted above, while appellees contend that such business was intrastate, and that appellant was therefore doing business in violation of the law of the state, and that it could not enforce in the courts of the state its unlawful contract.

It is to be noted that appellant's contract was for the equipment of the manufacturing plant with a sprinkler system, rather than the simple sale of machinery. It required the employment of labor for weeks in such construction, involving the building of a tower, a tank, and other carpenter work, and the excavating and filling of trenches, with the use of material which was on the ground of, and the property of, the manufacturing company. States in which the cases following have originated have statutes similar in principle to ours. In the case of *Ft. Worth Glass, etc., Co.* v. *Smythe Co.* (1910), 61 Tex. Civ. App. 388, 128 S. W. 1136, the con-

tract involved the equipment of a gas plant with three gas producers, furnishing all material and labor necessary therefor. The court said: "It was not a sale of material and pay therefor shipped from another state. The facts show that appellee, as a corporation, acting through an agent in charge, performed its contract to build and complete the three gas producers in Fort Worth, Texas, and that it required five weeks to do this, and that appellee, in doing the work, employed and paid labor and purchased some material in Texas, and that the other material was manufactured in other states and shipped into Texas by appellee. * * * Evidently a desire to transact business in Texas is evidenced. It was one transaction in the sense of one contract, to be sure. But if the statute should be so construed as contended for, the question of commerce between the states not being involved, then a contract by a foreign corporation to erect and complete a building in this state, regardless of the time it took or the magnitude of the work, would not be required to comply with the statute. If a contract requiring five weeks to complete is not within its terms, then a contract requiring two years to complete is likewise not within the terms of the statute. The purpose of the statute would not be accomplished by such construction."

In *Browning* v. *City of Waycross* (1914), 233 U. S. 16, 34 Sup. Ct. 578, 58 L. Ed. 828, the court said: "We are of the opinion that the court below was right in holding that the business of erecting lightning rods under the circumstances disclosed, was within the regulating power of the state and not the subject of interstate commerce for the following reasons: (a) Because the affixing of lightning rods to houses, was the carrying on of a business of a strictly local character, peculiarly within the exclusive control of state authority. (b) Because, besides, such business was wholly separate

from interstate commerce, involved no question of the delivery of property shipped in interstate commerce or of the right to complete an interstate commerce transaction, but concerned merely the doing of a local act after interstate commerce had completely terminated."

In *General Railway Signal Co.* v. *Commonwealth, etc.* (1918), 246 U. S. 500, 38 Sup. Ct. 360, 62 L. Ed. 854, the court held that equipment of the railway with a signal system, for the construction of which it was necessary to employ labor for local construction and painting, was local business and distinct from interstate commerce.

The case of *In re Springfield Realty Co.* (1919), 257 Fed. 785, involved the equipment of certain property located in Michigan with a sprinkler system, and is in all respects similar to the case at bar; and it was held that the contract did not involve interstate commerce, but that it was intrastate, the court saying: "Nor does the mere fact that in performing this contract the claimant or its subcontractors purchased and brought into the state from outside some of the material and labor used in equipping this plant affect the character of the transaction or make it interstate commerce. * * * If this were not so, any party to a contract on its face intrastate in character could readily change it into interstate commerce by merely transporting into the state where the contract was to be performed material purchased in and sent from another state, and using it in performing such contract."

Other cases, cited by appellee, and which are directly in point, are *Palm Vacuum Cleaner Co.* v. *Bjornstad* (1917), 136 Minn. 38, 161 N. W. 215, L. R. A. 1917C 1012, involving the sale, shipment and installation of a vacuum cleaner system; *Bryan* v. *S. F. Bowser & Co.* (1919), (Tex. Civ. App.) 209 S. W. 189, involving the sale and shipment of a gasoline tank, pump and acces-

sories, made at Fort Wayne, Indiana, and installed in Texas; *Buhler* v. *E. T. Borrowes* (1914), (Tex. Civ. App.) 171 S. W. 791, involving the sale of screen doors and windows and installation of the same in Texas; *American Amusement Co.* v. *East Lake Chutes Co.* (1911), 174 Ala. 526, 56 South. 961, involving the sale of machinery to be removed from another state, and furnishing the labor and material for its construction; *Mergenthaler Linotype* v. *Hays* (1916), (Mo.) 181 S. W. 1183, involving bringing into the State of Missouri linotype machines and leasing the same, with a reservation of yearly rentals. It will be remembered that in this case there was a leasing for years.

Upon the authority of all these cases, we hold that the contract and transaction involved in this action was not interstate commerce, but that it was the transaction of local business in the state and, as such, in violation of the act above quoted. Being an unlawful contract, it is not entitled to the protection of the courts of this state. *Winchester, etc., Light Co.* v. *Veal* (1896), 145 Ind. 506, 41 N. E. 334, 44 N. E. 353; *Harrison Tp.* v. *Addison,* (1911), 176 Ind. 389, 96 N. E. 146; *Barnhart* v. *Goldstein* (1901), 27 Ind. App. 101, 59 N. E. 1067; *Clark* v. *Southern R. Co.* (1919), 69 Ind. App. 697, 119 N. E. 539.

Even if the contract involved had been made after appellant had complied with the above-quoted statute and therefore not unlawful, still appellant is not entitled as against appellees to have his claim declared preferential and prior to the claim of said mortgagees. It appears by the averments of the answer and by the evidence that it attached the sprinkler system to the buildings and the real estate with concrete foundations, trenches, and other structures, so that it became a visible fixture and a permanent part of the plant. With this condition, appellees, without any

knowledge of appellant's claim of title, as the court has found, and acting upon appearances which appellant had created, lent money to the manufacturing company, accepting as security therefor a mortgage on the real estate with the buildings thereon including the sprinkler system as a part thereof. Under such circumstances, appellant is certainly estopped to assert title or lien as against appellees' mortgage. Ewell, Fixtures (2d ed.) §§485, 486; Jones, Mortgages (7th ed.) §429; *Millikin* v. *Armstrong* (1861), 17 Ind. 456; *Southbridge Sav. Bank* v. *Exeter Works* (1879), 127 Mass. 542; *Wickes Bros.* v. *Hill* (1897), 115 Mich. 333, 73 N. W. 375.

There was no error in overruling the demurrer to the second and third paragraphs of answer and the motion for a new trial. Other questions are presented, but, with the foregoing questions determined against the appellant, we do not need to consider them.

Judgment affirmed.