KOKOMO OPALESCENT GLASS COMPANY, Inc., Plaintiff-Appellee,

v.

ARTHUR W. SCHMID INTERNATIONAL, INC., Defendant-Appellant.

No. 15553.

United States Court of Appeals
Seventh Circuit.

Nov. 30, 1966.

209

Nelson G. Grills, Indianapolis, Ind., for appellant.

Alan H. Lobley, Donald F. Elliott, Jr., Indianapolis, Ind., for appellee, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., of counsel.

Before CASTLE, KILEY, and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

Plaintiff-appellee, Kokomo Opalescent Glass Company, Inc., a manufacturer of colored art glass, brought this diversity

action in the District Court against Arthur W. Schmid International, Inc., the defendant-appellant, for damages allegedly arising from a breach of the contractual time of delivery in the sale of a glass rolling machine to the plaintiff. The defendant counterclaimed for the contract price of the machine and for an additional $7,096.00 on the theory of quantum meruit. Jurisdiction over the defendant, a Pennsylvania corporation with its principal place of business in Pittsburgh, was based upon substituted service made pursuant to Rule 4(d) (7) of the Federal Rules of Civil Procedure (28 U.S.C.A.) and Ind.Ann.Stat. § 25–316 (Burns' Repl. 1960). The defendant made a pre-trial motion, in the alternative, to dismiss the action or to quash the return of service and the summons on the ground that it was not subject to the service of process within the Southern District of Indiana. The court, after hearing evidence, made and entered findings of fact upon which it concluded that the defendant was subject to the service of process in the action under the provisions of § 25–316, supra, and denied defendant's motion. The cause proceeded to trial before the court without a jury. The court, after making and entering detailed findings of fact and setting forth its conclusions of law, entered judgment for the plaintiff in the sum of $15,853.61, which amount represents the difference between $30,000.00 damages awarded the plaintiff on its complaint and $14,169.39 [1] awarded the defendant on its counterclaim. The court denied the defendant's motions for a new trial and to amend and revise the judgment, findings of fact and conclusions of law, and the defendant appealed.

The critical factual findings of the District Court are in substance, that on January 15, 1962, the defendant, a consultant in glass machinery and plants with considerable experience in the design and erection of glass rolling equipment, contracted with the plaintiff to deliver and install in plaintiff's Kokomo plant within approximately six months an intermittent rolling machine, adaptable for double rolling (employing four rollers), designed by defendant, to consist of certain specified parts and equipment, and capable of producing forty sheets of cathedral glass thirty-eight by ninety-six inches in size per hour. The machine was to replace a single rolling (two-roll) machine then in use, and it was contemplated that it would be installed during the plaintiff's summer shut-down of its plant in the following July and August. The execution of the contract followed two visits to plaintiff's plant by representatives of the defendant and discussions in which plaintiff was advised by the defendant that the double rolling (four-roller) type of machine was what plaintiff should use in its operation. In April of 1962, detailed layout drawings of the machine were submitted to plaintiff as required by the contract. Plaintiff approved the drawings and instructed defendant to proceed with its fabrication. On June 29, the defendant advised that the complete machine would not arrive at the plaintiff's plant in July, but should be completely shipped about the last part of August. Plaintiff delayed its shutdown for two weeks and continued production of glass until July 14, 1962. On July 30, and again on August 9, plaintiff was advised that it could still expect the machine in August. On August 16, plaintiff was advised that the machine was about to be shipped, and plaintiff proceeded to remove the old foundation and pour the concrete for the new footing, after a representative of defendant, who was present to supervise the erection of the machine, first checked the layout.

The District Court in its findings No. 11 and 12 found:

"11. On September 29, 1962, the parts of the machine began to arrive.

---

[1]. The contract price ($31,460.00) less credits for a down-payment ($7000.00) and agreed back-charges ($10,313.61) expended by the plaintiff for labor and materials in completing the installation of the machine under defendant's supervision.

When they began to assemble the machine under the supervision of Mr. James Craig of the defendant, it was found that many of the parts would not fit. Many nuts and bolts were missing and none of the air cooling system was in the shipment. These discrepancies existed because the machine had not been set up and run before the shipment was made. Corrective machining had to be done on the rolling machine and some of the sprockets had to be re-made. The whole air cooling system had to be manufactured in Kokomo. Mr. Wright of the plaintiff did not believe that Mr. Craig seemed to be able to handle the situation and Mr. Wright of the plaintiff telephoned Arthur W. Schmid of the defendant and requested him to send another man to assist in the machine assembling. The defendant then sent its employee, George Banner, to assist. The machine was corrected and assembled under the supervision of James Craig and George Banner. On October 18, 1962, the first attempt was made to roll glass.

12. The rolling of the glass after the machine was assembled was under the supervision of Mr. Craig of the defendant. At first the glass, after it went through the first rollers, began to stick to the dead plates. This was only cured by replacing it with the dead plate from the old machine. After it would pass over this dead plate into the second roller, the glass stuck on the dead plate coming out of the second roller. Sticking to the dead plates is caused by improper cooling of the plates. In addition thereto, the machine was unable to roll the glass of uniform thickness. This meant that the glass had varying density and also an even print could not be obtained on the glass. No saleable glass was rolled on the four-roll machine using all four rollers. On October 31, 1962, Arthur W. Schmid of the defendant came to Kokomo to examine the rolling machine. At his suggestion, the concave on the large roller of the first set of rollers was re-machined at Continental Steel Company in Kokomo. In addition thereto, the bore through the center of the large roller was increased. On the following day the machine rolled better glass of a more uniform thickness but the glass was not of sufficient uniformity in thickness to take an even print or to be saleable. Thereafter, Carl J. Ehrman of the defendant came to Kokomo, and he suggested a different glass formulation. This new formulation was tried but it did not improve the quality. Neither Mr. Craig, Mr. Banner, Mr. Ehrman or Mr. Schmid of the defendant had any further suggestions. Mr. Wright stated that he saw no alternative but to return to a two-roll machine to which the plaintiff consented."

Thereafter, the defendant proceeded to re-design the machine for operation as a single rolling (two-roll) machine. It was not until January 2, 1963, that the modification was completed and the machine began rolling saleable glass. The court concluded, *inter alia,* that the defendant breached its contract to install an operable four-roll glass rolling machine within the time agreed upon, and that as a consequence of the breach and attendant loss of production the plaintiff was damaged to the extent of $30,000.00.

Defendant in its appeal has not attempted to demonstrate that these critical affirmative findings of fact of the District Court are clearly erroneous for lack of evidentiary support in the record but contends that the court applied erroneous criteria in sustaining the validity of the substituted service; and contends additionally, in substance, that there was neither a breach in contractual time for delivery of the machine nor of any implied warranty of reasonable fitness of the machine for the purpose intended; that the court erred in not concluding, on the basis of unpleaded affirmative defenses of waiver and estoppel, that plaintiff is precluded from asserting any breach in contractual time for delivery; and that the court applied an impermis-

sible standard in arriving at plaintiff's damages.

In addition to the findings above summarized, the District Court, following its pre-trial hearing on defendant's motion asserting the invalidity of service and consequent lack of jurisdiction over the defendant, made findings that the defendant's proposal to furnish the machine was accepted by the plaintiff in Indiana, called for installation of the machine by the defendant at plaintiff's Kokomo, Indiana, plant, and that representatives of the defendant were in Kokomo from August of 1962 until January 5, 1963, with certain minor exceptions, for the purpose of supervising the installation of the machine. The court concluded that the action arose directly out of a contract made in Indiana, to be performed in Indiana, and in the performance of which the defendant engaged in a transaction in Indiana "and this action grows directly out of the acts done by the defendant in the State of Indiana while engaged in such transaction in the State of Indiana", and the defendant was subject to service of process in the action under the provisions of Ind.Ann.Stat. § 25–316.

That section provides in pertinent part that:

"The engaging in any transaction or the doing of any business in this state by any foreign corporation not licensed nor admitted to do business in this state under any existing act or any act hereafter enacted shall be deemed equivalent to an appointment by such foreign corporation of the secretary of state, or his successor in office, to be the true and lawful attorney and agent of such foreign corporation upon whom may be served all lawful processes, writs, notices, or orders in any action or proceeding against such foreign corporation arising or growing out of, directly or indirectly, any act

or thing done by such corporation within the state of Indiana."

■■ Defendant recognizes that Rule 4(d) (7) of the Federal Rules of Civil Procedure authorizes service of process upon a foreign corporation in the manner prescribed by the law of the state, but assails the validity of the service in the instant action on the ground that the defendant's activities in the making and performance of this single contract neither supplied such "minimum contacts" with the foreign jurisdiction as are sufficient to satisfy due process requirements that such manner of service not offend traditional notions of fair play and substantial justice nor constituted the "doing of business" within the purview of the Indiana statute. We are of the opinion that the unchallenged · factual findings of the District Court reveal the existence of activities of the defendant in Indiana in connection with the contract which amply serve to satisfy the presence of at least such minimal contacts with that jurisdiction that the maintenance of this suit there does not offend traditional notions of fair play and substantial justice. National Gas Appliance Corporation v. AB Electrolux, 7 Cir., 270 F.2d 472. And, the second premise of defendant's argument overlooks the fact that § 25–316 is not confined in its application to foreign corporations which "do business" in the state in the conventional sense of that terminology as used in the statutes involved in the cases relied upon by defendant [2] but also brings within its scope "[t]he engaging in any transaction * * * in this state by any foreign corporation" etc. This was pointed out in Electronic Manufacturing Corporation v. Trion, Inc., (D.C.S.D.Ind.) 205 F.Supp. 842 and in Green v. Robertshaw-Fulton Controls Company, (D.C.S.D.Ind.) 204 F. Supp. 117. We perceive no error in the District Court's denial of defendant's motion challenging the validity of the

2. Dodgem Corp. v. D. D. Murphy Shows, Inc., 96 Ind.App. 325, 183 N.E. 699, 185 N.E. 169; Vilter Manufacturing Company v. Evans, Rec., 86 Ind.App. 144, 154 N.E. 677; United States Construction Co. v. Hamilton National Bank, 73 Ind.App. 149, 126 N.E. 866.

service and the court's acquisition of jurisdiction over the defendant.

█ Defendant's contention that the court erred in concluding that defendant breached the contractual requirement with respect to time of delivery is based on the premise that the record does not establish that a definite delivery date was fixed. The record discloses that the defendant's proposal contained the following clause:

" Delivery.
Maximum approximately six (6) months after receipt by seller of accepted proposal and down payment."

After defendant had made the proposal but prior to the plaintiff's return of the document with the acceptance clause executed by plaintiff, together with the required down payment, defendant had written the plaintiff enclosing a drawing of the proposed machine and stating:

"We may make some minor changes, and while the drawing is quite accurate to scale, some of the dimensions would be changed in the final drawings. We are investigating further as to just what the Wissmach machine [one used by a competitor of the plaintiff] looks like, and this may influence some of the changes that we might make."

In plaintiff's letter of January 15, 1962, transmitting the accepted proposal and the down payment, plaintiff stated:

"We are returning a signed contract with check in separate mail for $7000 to cover our down payment with the understanding that several changes may yet be made in the final design of the machine."

The defendant argues that this acknowledgment of its reference to the possibility of minor changes in the final design had the effect of making the plaintiff's acceptance conditional, that the record fails to show any unconditional acceptance of the proposal by the plaintiff, and consequently the delivery clause is not shown to have been triggered and there is no date from which the six month period may be computed. We are not persuaded

by this argument. It is wholly inconsistent with the defendant's retention of the down payment and its recognition of a July delivery date in its later expression of regret that "the complete machine will not arrive at your plant in July". In our opinion the January 15, 1962, execution of the acceptance clause of the proposal and its return to the defendant with the down payment constituted an unconditional acceptance and fixed the contractual delivery date as not later than six months thereafter.

█ Defendant makes an alternative contention that, in any event plaintiff is precluded by estoppel or waiver from asserting a breach in delivery date. In this connection the defendant urges that plaintiff repudiated the contract, caused the breach, and made delivery of the machine contracted for unnecessary or impossible, and thus is estopped from asserting the breach; and that by accepting the machine as re-designed and modified the plaintiff waived the breach of the contractual delivery time and excused a strict performance of the contract. These enumerated factors upon which the defendant so premises a claim of estoppel or waiver all have reference to the fact that when by the second week of November 1962 the defendant had failed to make the machine operable to produce saleable glass, and had no further suggestions with respect to correcting the machine's deficiencies, the plaintiff suggested that the machine be modified to a single rolling (two-roll) machine. By that time the plaintiff had already lost over two month's production, and it made the suggestion only when it became apparent that the double rolling machine delivered by the defendant was not reasonably fit for the purpose it was intended. The evidence is overwhelming that the four-roll machine was not working and there was no reasonable probability that it could be made to work. Upon defendant's representations as to delivery, plaintiff had dismantled its old machine, torn out its footings, and installed footings for the new machine. It had but one production

line and until a glass rolling machine was made operable it would be out of production. The plaintiff's suggestion, adopted by the defendant as a way out of its difficulties, certainly was not a repudiation of the contract by the plaintiff. Nor did it form a basis for the estoppel or waiver defendant claims.

■ The defendant complains that the court erred in refusing to set forth conclusions of law expressly covering the factors of estoppel and waiver it claims were in issue as having been tried although not pleaded. We find no reversible error in this connection. The affirmative findings made and the conclusions expressly set forth negate a conclusion that plaintiff either waived the breach or is estopped from asserting it. Whitson v. Aurora Iron & Metal Co., 7 Cir., 297 F.2d 106, 109 and 110. Moreover, it is obvious from the record that the defendant's contentions with respect to estoppel and waiver did not escape the court's consideration. The court's denial of defendant's motion to amend the findings of fact and conclusions of law constituted a rejection by the court of any conclusion favorable to the defendant on any issue of estoppel or waiver. And, there is no basis in the record for a conclusion favorable to the defendant on the existence of either estoppel or waiver. We agree with the trial court that in view of the conclusions it did set forth there was no need for a recitation of conclusions of law on what the court characterized as affirmative defenses "abstractly referred to in the briefs".

■ Defendant's contentions that there was no breach of any implied warranty of the reasonable fitness of the double rolling machine for its intended purpose, and that if such warranty did exist the plaintiff relieved the defendant of any responsibility thereunder by itself undertaking the construction of the machine, are devoid of merit. The record establishes and the District Court expressly found that plaintiff in its preliminary discussions with the defendant expressed interest in replacing its old single rolling machine with a double rolling machine "if [defendant] thought it could be used in plaintiff's operation" and that after two visits to plaintiff's plant, and discussion of plaintiff's needs, defendant's representatives advised the plaintiff that the double rolling machine would be the type of machine the plaintiff should use. In this connection the plaintiff's president testified that plaintiff mentioned its interest in a double rolling machine but "we also asked [defendant's] opinion" and "that due to the many years of experience that Mr. Craig had had in rolled glass, and that Mr. Schmid had also had wide experience in rolled glass, we thought that—we believed their statement that four-roll [a double rolling machine] would make a better product". The court's findings on this issue are fully supported by the record, and the provisions of Ind.Ann.Stat. § 58–115 [3] apply and serve to raise an implied warranty of reasonable fitness for intended purpose.

■ Finding No. 11 of the District Court, heretofore set forth, is to the effect that plaintiff's part in furnishing labor and materials in connection with the assembling and installation of the machine at plaintiff's plant was "under the supervision of Mr. James Craig of the defendant". There is no evidence referred to by the defendant to support its contention that plaintiff undertook the assembly or installation, or interfered with defendant's discharge of its obligations in this respect, much less that plaintiff undertook to design and construct the machine.

■■ The evidence introduced to establish damages included testimony con-

---

3. Ind.Ann.Stat. § 58–115 (Burns' Repl. 1961) provides:
  "(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

cerning loss of profit on glass the defendant would have produced during the last four months of 1962 but for defendant's failure to deliver an operable machine which would produce saleable glass until January of 1963. There is testimony that had plaintiff been in full production during those months it could have readily sold all the glass it would have made—the quantity of such production being measured by the average production in the equivalent months of the two preceding years and of the subsequent year. Such evidence may be considered in the determination of the damages to be awarded in a case such as this. City of Terre Haute v. Hudnut et al., 112 Ind. 542, 13 N.E. 686; Corbin on Contracts, § 1023. Cf. Connersville Wagon Co. v. McFarlan Carriage Co., 166 Ind. 123, 76 N.E. 294, 3 L.R.A.,N.S., 709, where the rule applied in the *Terre Haute* case is recognized. The evidence here did not concern future or wholly speculative profits, and the decisions relied upon by defendant in this connection are therefore inapposite. Plaintiff's loss if computed on the basis of the evidence above referred to would be substantially in excess of the amount ($30,000.00) the court awarded the plaintiff on its complaint. Thus, it is apparent that the court did not adopt loss of profits as an absolute criterion by which to measure and fix the plaintiff's damages. And, the record does not support the defendant's contention that plaintiff's damages were but nominal. We conclude that the defendant has failed to demonstrate the existence of any reversible error in the court's award of damages.

We have considered certain additional but subsidiary contentions the defendant makes, and the cases cited and relied upon by the defendant in connection therewith, but we are of the view that none of them merit an extension of this opinion for the purpose of discussing the same.

The judgment order appealed from is affirmed.

Affirmed.