[Civ. No. 14541. First Dist., Div. Two. Sept. 12, 1950.]

PROCTOR AND SCHWARTZ, INCORPORATED, Petitioner, v. THE SUPERIOR COURT OF SAN MATEO COUNTY et al., Respondents.

Keith, Creede & Sedgwick for Petitioner.

Edmund J. Holl for Respondents.

GOODELL, J.—Petitioner seeks a writ of prohibition or, alternatively, review or mandate, to halt further proceedings in the case of *John C. Turner* v. *Proctor and Schwartz, Incorporated,* pending in the Superior Court in San Mateo County.

That action is to recover $100,000 damages for personal injuries alleged to have been sustained by the plaintiff Turner at the plant of Consolidated Chemical Industries, Inc., in San Mateo County, where he was employed. From the complaint it appears that a contract had been entered into between Proctor and Schwartz, Inc., a Pennsylvania corporation, as seller, and Consolidated, as buyer, for the sale of certain chemical manufacturing machinery, devices and equipment, for installation in Consolidated's plant, which contract provided that Proctor would send out a man to supervise the installation. It alleges that a man was sent out and during such installation and because of his negligence plaintiff Turner sustained serious bodily injuries.

On plaintiff's motion the court ordered service of summons on the Secretary of State. On August 16, 1949, service was so made and he forwarded the papers to petitioner in Pennsylvania, whereupon the latter appeared specially and moved to quash the service. The motion was denied, and the present application was filed.

Respondents contend that the court properly denied the motion because one of the grounds thereof went beyond the bounds of a special appearance and converted it into a general appearance.

The language claimed by respondents to constitute a general appearance is contained in the third ground of the motion to quash, reading as follows:

"3rd. That said summons does not state the nature of the so-called action alleged against the defendant, nor does the summons or complaint state facts sufficient to show that the defendant is amenable to the processes of the courts of the State of California."

If this is no more than an objection, phrased in the language of a demurrer, on the ground that the court had not acquired jurisdiction of the person of the defendant, then it is nothing but a special appearance. *Judson* v. *Superior Court,* 21 Cal.2d 11, 13 [129 P.2d 361], so holds when it says: " . . . The test is—Did the party appear and object only to the consideration of the case or any procedure in it because the court had not acquired jurisdiction of the person of the defendant or party? If so, then the appearance is special. If, however, he appears and asks for any relief which could be given only to a party in a pending case, or which itself would be a regular proceeding in the case, it is a general appearance regardless of how

adroitly, carefully or directly the appearance may be denominated or characterized as special (*In re Clarke,* 125 Cal. 388 [58 P. 22].) . . .'' See also *Lacey* v. *Bertone,* 33 Cal.2d 649, 651 [203 P.2d 755].

In support of their position respondents rely on a group of cases wherein the so-called special appearance contained what amounted to either a general or special demurrer, or a demurrer on the ground that the court had no jurisdiction of the subject matter of the action, for which reason they are readily distinguishable from the third ground of the motion in this case. They are: *Raps* v. *Raps,* 20 Cal.2d 382, 384-5 [125 P.2d 826]; *Security etc. Co.* v. *Boston etc. Co.,* 126 Cal. 418 [58 P. 941, 59 P. 296]; *Maclay Co.* v. *Meads,* 14 Cal.App. 363, 369 [112 P. 195, 113 P. 364], *infra; Roberts* v. *Superior Court,* 30 Cal.App. 714 [159 P. 465]; *Taylor* v. *Superior Court,* 93 Cal.App. 445 [269 P. 727]; *Morte* v. *Justice's Court,* 139 Cal. App. 605 [34 P.2d 748]; *MacPherson* v. *Superior Court,* 22 Cal.App.2d 425 [71 P.2d 91].

Other cases cited by respondents where, on the motion to quash, or to dismiss, or other special appearance, relief was sought ''which could be given only to a party in a pending case, or which itself would be a regular proceeding in the case'' are: *Childs* v. *Lanterman,* 103 Cal. 387 [37 P. 382, 42 Am.St.Rep. 121] (motion to set aside findings and judgment and to strike out answer); *Zobel* v. *Zobel,* 151 Cal. 98 [90 P. 191], (appearance in court of defendant's attorney to request continuance of motion to strike out pleadings); *Nisbet* v. *Clio Mining Co.,* 2 Cal.App. 436 [83 P. 1077] (motion to retax costs and to strike items from cost bill); *Maclay Co.* v. *Meads,* 14 Cal.App. 363, *supra* (objection to judgment as unsupported by complaint); *Shelley* v. *Casa De Oro, Ltd.,* 133 Cal.App. 720 [24 P.2d 900] (motion on ground that judgment was not supported by findings); *Burrows* v. *Burrows,* 10 Cal.App.2d 749 [52 P.2d 606] (motion to strike parts of interlocutory decree); *Nelson* v. *Superior Court,* 75 Cal.App.2d 372 [171 P.2d 52] (motion to vacate order appointing receiver).

Respondents also cite *Wall* v. *Superior Court,* 48 Cal.App. 564 [192 P. 134], which went to the length of holding that a demurrer on the ground that the court had no jurisdiction of the *person* amounted to a general appearance. None of the three cases which it cites so holds. That case simply failed to discriminate between two different grounds of demurrer; it has never been cited (according to Shepard) in any reported case, and it is out of line with all the cases heretofore discussed.

The third ground of the motion to quash is certainly neither a general nor a special demurrer; nor a demurrer for lack of jurisdiction of the subject matter; nor does it seek any relief which could be had only in a pending case, hence there is no merit in the claim that it constituted a general appearance.

The real question presented is whether the showing on the motion to quash warranted the holding that Proctor and Schwartz, Incorporated, was doing business in California, which was the ultimate inquiry before the trial court. Respondents in their brief merely state the point, assert that the corporation was doing business, and let it go at that, without discussing the facts shown in the complaint and affidavits or citing any authority supporting the affirmative side of the issue. The petitioner invited a full discussion of this, the main question, when its counsel asserted in their brief that on the motion the burden rested on the plaintiff to prove that the corporation was transacting business in California, and. that such burden had not been sustained (citing *Hollywood Garment Corp.* v. *J. Beckerman, Inc.,* 61 Cal.App.2d 658 [143 P.2d 738]). Instead of facing that issue and meeting it head-on, respondents have briefed the case only on the question just disposed of, namely, whether the appearance was special or general.

In *West Publishing Co.* v. *Superior Court,* 20 Cal.2d 720, 726 [128 P.2d 777], our Supreme Court says: "Whatever the form of a particular statute authorizing service of process upon the agent of a foreign corporation which has not complied with the qualifying laws of a state, it is a fundamental requisite under the federal Constitution that the corporation shall be 'doing business' in the jurisdiction where the service is made to sustain its validity. [Citations]"

It is settled in this state that when it appears that a defendant is a foreign corporation, and the validity of the service of process is challenged, the burden is upon the plaintiff to prove that such defendant was doing business in the state (*Jameson* v. *Simonds Saw Co.,* 2 Cal.App. 582, 585-6 [84 P. 289], followed in *Carpenter* v. *Bradford,* 23 Cal.App. 560, 562-3 [138 P. 946] and *Fuller* v. *Lindenbaum,* 29 Cal. App.2d 227, 232 [84 P.2d 155]; see, also, *Hollywood Garment Corp.* v. *Beckerman, Inc., supra,* 61 Cal.App.2d 658, 660).

The verified complaint in the Turner case and the affidavit of Edmund J. Holl, attorney for Turner (filed in support of the motion for service on the Secretary of State), allege that

Proctor and Schwartz, Incorporated, was at all times therein mentioned "engaged in the business of manufacturing, selling and installing certain types of machinery . . . in the State of Pennsylvania, and other states . . . including the State of California." Both the complaint and the affidavit then show, by the language they use, that the doing of business by the corporation was confined to the single transaction alleged in the complaint. This is made clear by the pleader's use of the words "in that" in the following allegation: "That on the 6th day of August, 1948, and for some time prior thereto, the exact period of time which to this plaintiff is unknown, said defendant Proctor and Schwartz, Incorporated, was engaged in doing business in the State of California, . . . *in that* it had entered into a contract with a certain firm known as the Consolidated Chemical Industries, Inc., whose main office is located at 111 Sutter Street" in San Francisco "which contract involved the selling, delivering and installation in the factory of said Consolidated . . . located . . . in the County of San Mateo . . . certain chemical manufacturing machinery devices and equipment, among which was certain apparatus known as a glue dryer machine; that said installation required expert services, which said defendant . . . upon accepting said contract, and thereby availing itself of the privilege of doing business in the State of California, agreed to and did furnish, in the person of James R. Kraus, its servant, agent and employee, who had exclusive supervision, direction and control, as an engineer, of installation of said machinery chemical devices and equipment, as aforesaid, under the employment of said defendant . . ." (emphasis added).

The affidavit of Attorney Holl, which adopts the allegations of the complaint, fails to show any transaction beyond that alleged in the complaint, and it repeats the language of the complaint to which attention has just been drawn when it deposes that the corporation "was engaged in doing an intrastate business . . . *in that* it had entered into a contract or contracts with . . . Consolidated . . ." (emphasis added) and continuing on with substantially the same allegation as that contained in the complaint just quoted. The Holl affidavit shows that Proctor and Schwartz, Incorporated, "after doing business in the State . . . thereafter withdrew from said State." That circumstance was one of the grounds on which service on the Secretary of State was based (Corp. Code, § 6504).

In support of its motion to quash, the corporation filed

an affidavit made by W. E. Sedgwick, one of its attorneys, in which he deposes that Proctor and Schwartz, Incorporated is a Pennsylvania corporation, and that at all times therein mentioned, including the date of the accident and the date of the service, the corporation did not maintain, and had not maintained, any office, place of business, showrooms, or warehouses, in California, or any agent, officer, or any other person therein upon whom service of summons could be made; that on July 14, 1947, the corporation countersigned at Philadelphia, a contract effective that date between itself and Consolidated, which provided that it would furnish Consolidated, as purchaser, certain machinery for an agreed price f. o. b. car, company's plant, Philadelphia. The affidavit states, further, that at no times mentioned in the affidavit did the corporation maintain a sales force, or any salesmen, in California, and at no times therein mentioned could any employee or representative of said corporation in California collect money; that the purchase price for all machinery sold in California was received by the corporation in Philadelphia; that it maintained no bank account in California; that all statements and invoices sent to the purchaser in California were sent from Philadelphia; that no credit was extended to a purchaser in California on behalf of the corporation by any person in California and that it borrowed no money in California. The affidavit concludes: ''That affiant is informed and believes, and therefore states, that at all times herein mentioned said corporation was not engaged in doing business in . . . California and was not engaged in doing an intra-state business in . . . California; that it did not enter into any contracts in . . . California and that it did not enter into any contract of sale and did not deliver and install machinery in the factory of said Consolidated Chemical Industries, Inc., in the County of San Mateo, State of California, or otherwise.''

The Sedgwick affidavit quotes in part the contract between Proctor and Consolidated as follows: ''The purchaser shall supply sufficient good mechanics, under competent supervision to erect the machinery in a reasonable length of time. The company will lend one of its employees to the purchaser to assist in such erection, the company making no charge at [for?] the time of such loaned employee, but the purchaser shall pay the traveling expenses from Philadelphia, . . . and return, his board and incidental expenses'' and then adds that pursuant thereto one Crouse, an employee of the corporation,

whose contract of hire was made in Philadelphia, was sent out to the Consolidated's plant in San Mateo County to assist in the erection of the machinery and who was on said premises in said capacity on the date of the accident and was the only employee of the corporation performing services for it in California at that time and in connection with the contract.

The corporation also filed an affidavit of T. J. Wilson, the San Francisco machinery broker who negotiated the contract of sale between Proctor and Consolidated, which affidavit shows that Wilson was not an officer, agent, or employee of Proctor, and received no salary, but operated merely on a commission basis. It shows, also, that he represents other eastern manufacturing concerns as well.

The case of *York Mfg. Co.* v. *Colley,* 247 U.S. 21 [38 S.Ct. 430, 62 L.Ed. 963, 11 A.L.R. 611], controls this case. There York Mfg. Co., a Pennsylvania corporation, entered into a contract with Colley, a resident of Texas, to sell and install in Texas an ice plant, and wherein the seller agreed to furnish an engineer to assemble and erect the machinery and make a practical efficiency test before complete delivery. The services of the engineer in supervising the installation were to be paid for by the purchaser at the rate of $6.00 per day. When the seller sued in Texas for the contract price of the plant, the defendant-purchaser set up the defense that the seller—because of its activities in supervising the installation through its engineer—was doing business in Texas and since it had not obtained a permit to do so it could not sue in that state. The Texas courts so held, but the Supreme Court of the United States reversed, holding that the services of the engineer in Texas were relevant and appropriate to the interstate contract of sale of the ice plant, and were inherently part of it, hence such services did not constitute the doing of business in Texas within the meaning of that state's requirement of a license.

The presence of Crouse in Consolidated's plant was in pursuance of the contract, which contract unquestionably constituted a transaction in interstate commerce (*Charlton Silk Co.* v. *Jones,* 190 Cal. 341, 342 [212 P. 203]; *W. W. Kimball Co.* v. *Read,* 43 Cal.App. 342, 345 [185 P. 192]; *Indian Refining Co.* v. *Royal Oil Co., Inc.,* 102 Cal.App. 710, 715, 716 [283 P. 856].)

If in *York Mfg. Co.* v. *Colley* the services of the engineer who was sent from Pennsylvania to Texas admittedly to *supervise* the erection of the ice plant, did not constitute the

doing of business by the corporation in Texas, then certainly the services of Crouse who, according to the contract was "lent" to Consolidated to "assist" its own employees in the installation, cannot be held to constitute the doing of business by the corporation in California.

At first blush there would seem to be a conflict between the allegations of the complaint (and the Holl affidavit) that Crouse had the *supervision* of the installation, and those of the Sedgwick affidavit, quoting the contract itself, that he was only *lent* by Proctor to *assist* Consolidated's employees in the installation. There is no real conflict, however, since under either theory Crouse's services were, under the rule of *York Mfg. Co.* v. *Colley,* inherently part of, and incidental to, the interstate contract.

■ As stated at the outset, the petitioner seeks a writ of prohibition or, alternatively, review or mandate. We are satisfied for the reasons and on the authorities cited herein that the petitioner was not at any time doing business within this state, and that the motion to quash the service of summons on the Secretary of State should have been granted. The error in denying that motion can be adequately corrected by a writ of mandate.

Accordingly a peremptory writ of mandate should issue, directing the superior court to vacate and set aside its order denying said motion to quash, and in lieu thereof to enter its order granting said motion. It is so ordered.

Nourse, P. J., and Dooling, J., concurred.