ATLAS ELEVATOR CO. *v.* PRESIDING JUDGE OF THE CIRCUIT COURT OF THE FIRST CIRCUIT; AMY CHITAE SEGAWA, ADMINISTRATRIX OF THE ESTATE OF GEORGE TERUO SEGAWA, DECEASED, AMY CHITAE SEGAWA, INDIVIDUALLY; KEITH TSUTOMU SEGAWA AND VALERIE CHIEMI SEGAWA, INFANTS BY THEIR NEXT FRIEND; AND THE CITY AND COUNTY OF HONOLULU.

No. 4492.

MARCH 24, 1966.

CASSIDY, ACTING C.J., WIRTZ, LEWIS AND MIZUHA, JJ., AND CIRCUIT JUDGE LEVINSON ASSIGNED BY REASON OF VACANCY.

130

OPINION OF THE COURT BY LEWIS, J.

By petition for a writ of prohibition petitioner presents the question whether service of summons by filing the same with the Director of Regulatory Agencies of the State on September 16, 1964 subjected petitioner to the jurisdiction of the Circuit Court of the First Circuit in a certain action brought by respondents, who are Amy Chitae Segawa, individually and in a representative capacity and two infants, to recover damages for the death of the husband and father of said respondents as a result of injuries suffered in an elevator accident in Honolulu in September 1962. The accident allegedly was caused by

negligent installation of the elevator in 1955 by petitioner, named in said suit as a defendant.

The circuit court, Honorable Frank A. McKinley, Fourth Judge presiding, ruled that it had jurisdiction and denied petitioner's motion to dismiss. This petition followed. After the prohibition case had been argued in this court and while it was under advisement Judge McKinley left the bench. We deem the alternative writ, issued herein upon the filing of the petition, equally applicable to any judge who may preside over the case in the circuit court, and proceed to the question whether a permanent writ should issue.

Petitioner is a California corporation which has not qualified to do business in this State. As defendant below, it moved to dismiss the circuit court action and to quash service of summons, relying *inter alia* upon R.L.H. 1955, § 174-7.5 (Supp. 1963), added by S.L. 1957, c. 315, which provides in paragraph (i) that "transacting any business in interstate commerce" shall not by reason thereof be considered to be "doing or carrying on business in the [State] for the purposes of this chapter [chapter 174, R.L.H. 1955]"; and upon sections 174-1 and 174-2 of chapter 174 as they read in 1955. In 1957, as we shall have occasion to note, section 174-2 was repealed and section 174-1 was amended.

The significance of petitioner's reliance on these sections of chapter 174 lies in the provisions of R.L.H. 1955, § 172-150. The authorization for service upon the Director of Regulatory Agencies must be found in this section. As amended by S.L. 1963, c. 193, it read in pertinent part as follows:

"§ *172-150. Manner of Service.*
\* \* \* \* \*
"If no officer, director, manager, superintendent or other person in charge of the property, business or

office of the corporation can be found within the State; and in case the corporation, if a foreign corporation, has neglected to file with the officer specified in section 174-1[1] * * * the name of a person upon whom legal notice and process from the courts of the State may be served; and likewise in the event that the person so named is not found within the State, service may be made upon the corporation by filing with the [director of regulatory agencies], or in his absence, with the [deputy director], a copy of the notice, or process, certified to be such under the seal of any court of record * * *. The [director or deputy director] so served shall immediately notify the defendant corporation of such service. The filing shall be deemed service upon the corporation forty-five days after the filing * * *."

Section 174-1, referred to in this statute, as amended by S.L. 1957, c. 315, *supra,* requires the qualification of a foreign corporation which undertakes to "do or carry on business in the State," including as one of the requirements for qualification the designation of an agent for service of process. When sections 172-150 and 174-1 are read together, it appears that a foreign corporation which is not within the scope of section 174-1, and is not required to designate an agent for service of process, cannot be served by filing the process with the Director of Regulatory Agencies. Only a foreign corporation within the ambit of section 174-1 can be said to have "neglected to file with the officer specified in section 174-1." And such neglect, or unavailability of the corporation's designated agent, is by the terms of section 172-150 a condition pre-

---

[1] S.L. 1963, c. 193, deleted as obsolete a reference to section 174-2 which previously appeared at this point in addition to the reference to section 174-1 still appearing there.

cedent to authority to serve the Director of Regulatory Agencies.

While this interpretation is disputed by the Segawa respondents, plaintiffs in the court below, we deem it the only possible interpretation. We are not at liberty to rewrite section 172-150 by interpolating the words underscored below so as to cause it to say: "* * * and in case the corporation, if a foreign corporation, has neglected to file * * * *or is not required to do so.*" If the legislature had intended to provide for a means of serving every foreign corporation it would have said so. But to have said that would have rendered the statute too broad; the statute would have been without constitutional guideposts. *Cf., Cella Comm'n Co.* v. *Bohlinger,* 147 Fed. 419 (8th Cir.). Section 172-150 is not of such breadth. It is easily recognized as a common type of statute, which at least until a new trend was instituted by *International Shoe Co.* v. *Washington,* 326 U.S. 310, was founded on the express or implied consent of a foreign corporation to be served when it designated an agent for the purpose or was required to and failed to do so. *Cf., Wilson* v. *Seligman,* 144 U.S. 41, 45; *Old Wayne Life Ass'n* v. *McDonough,* 204 U.S. 8, 21-22; *Simon* v. *Southern Ry.,* 236 U.S. 115, 130; *American Ry. Express Co.* v. *Royster Guano Co.,* 273 U.S. 274, 280; *Washington* v. *Superior Court,* 289 U.S. 361. This statute might have served respondents' purpose without resolution of the factual issues encountered here, had not Act 315, S.L. 1957, narrowed the requirements as to designation of an agent, repealing section 174-2 which in turn caused the reference to section 174-2 to be deleted from section 172-150 as set out in note 1, *supra.* This is discussed further in connection with the legislative history of chapter 174, *infra.*

By S.L. 1965, c. 134, the legislature added to the armory of the State a statute providing for service of

process on persons without the State, individuals as well as corporations, as to causes of action arising from certain enumerated acts. The 1965 statute is a "long-arm" statute which, as stated in the committee reports on the bill (House Stand. Comm. Rep. No. 805; Sen. Stand. Comm. Rep. No. 822), "is in line with the modern trend[2] making out-of-state corporations, partnerships or persons who have certain significant contacts within the state, amenable to personal service in a suit filed in the state upon a claim resulting from such contacts."[3] The 1965 statute is not before us. However, we deem it appropriate to note that it is materially different from section 172-150 here involved. *Cf., Elkhart Eng'r Corp.* v. *Dornier Werke,* 343 F.2d 861, 864 (5th Cir.); *Nelson* v. *Miller,* 11 Ill. 2d 378, 143 N.E.2d 673; *Simonson* v. *International Bank,* 14 N.Y.2d 281, 200 N.E.2d 427; *Longines-Wittnauer Watch Co.* v. *Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 209 N.E.2d 68.

Turning now to the facts of this case bearing on the applicability of section 174-1 and hence the applicability of section 172-150, we proceed on the basis of the findings of the trial judge presiding upon the hearing of petitioner's motion. Under our construction of the statutes, it is unnecessary to consider petitioner's attack upon these findings. We assume, without deciding, that the facts are as found, that is, that petitioner contracted with Belle Haven Realty Co. to install the elevator in question in the Waikiki Biltmore Hotel in Honolulu,[4] that the

---

[2] This "modern trend" had its origin in the 1945 opinion of the United States Supreme Court in *International Shoe Co.* v. *Washington, supra,* 326 U.S. 310.

[3] The quotation is from the report of the House Committee on Judiciary, House Stand. Comm. Rep. No. 805, 1965 Session.

[4] Petitioner takes the position that it did not make the installation— that Belle Haven did and petitioner only furnished a man to Belle Haven to supervise the installation. The trial court did not accept this view, and for present purposes we do not accept it.

contract was made in California, that the elevator was installed in Honolulu sometime during the period between March and December of 1955, that the installation was under the direct control of petitioner, and that several months were required to accomplish the work. It is undisputed that this is the only elevator installation which petitioner has made in this State at any time.

We first consider the relevant statutes as they read at the time of the elevator installation in 1955. At that time, as has been seen, section 172-150 referred to section 174-2 as well as 174-1. Section 174-2 provided that a foreign corporation "which engages in any interstate or foreign commerce in the Territory, and which does not undertake to do or carry on any intrastate business in the Territory" must register designating an agent for service of process and furnishing certain information. Pursuant to section 174-7 the fee for this registration was $1.00. Section 174-1 at that time related specifically to the carrying on of "any intrastate business," as did sections 174-8 to 14. All of these sections were inapplicable to corporations registered under section 174-2, engaged solely in interstate commerce. Foreign corporations coming under section 174-1 were subject to statutes requiring the furnishing of more information than was required by section 174-2, such as information as to capitalization and assets, the filing of a bond unless there were sufficient assets in the Territory, payment of a filing fee of $50 and an annual license fee of $100, and the filing of an annual exhibit of the affairs of the corporation. These statutes subjected the corporation and its agents to penalties for noncompliance, including denial of the corporation's right to sue or plead, provided for examination into the corporation's affairs, and imposed certain requirements for withdrawal from the Territory. In short, the statutory provisions applicable to the doing of intrastate business

(section 174-1) were more burdensome than those imposed on a corporation confining itself to interstate business (section 174-2). The latter was merely required to register, and if it did not, service could be made under section 172-150.

Prior to the enactment of section 174-2, which was enacted as part of section 8391 of the Revised Laws of Hawaii 1945 by S.L. 1951, c. 294, there had been a somewhat similar system under which corporations engaged in interstate commerce, while required to register, were not required to comply with all of the statutory provisions generally applicable to foreign corporations. Thus in *Kalanianaole* v. *Pacific Mail S.S. Co.*, 2 U.S.D.C. Haw. 301 (1905) it was held that though defendant, as a corporation engaged solely in the business of foreign or interstate commerce, pursuant to the terms of the statute was not required to pay the annual license fee or procure an annual license, still it was required to register and "the authorities agree that a foreign corporation doing business locally may not take advantage of its neglect of filing such required papers and thereby evading service of process." Service in that case was made on the defendant's agent here. Subsequently, by S.L. 1909, c. 43, the section now numbered sec. 172-150 was enacted to permit service on the treasurer of the Territory, predecessor of the Director of Regulatory Agencies of the State, in case of such neglect.

When section 174-2 was repealed by S.L. 1957, c. 315, the legislature specifically authorized the treasurer "to cancel the registration of every foreign corporation that has heretofore registered to do business in the Territory in interstate or foreign commerce pursuant to the provisions of section 174-2." According to Standing Committee Report No. 334 on S.B. 609 which became Act 315, S.L. 1957 (S. Jour. 1957, pp. 544-45) section 174-2 "was testi-

fied to as being unconstitutional,"[5] and it was further stated in the committee report that: "Creditors will not be affected as the corporations can be sued in our courts." This of course was true as long as the corporation remained in the Territory. *Cf., International Harvester Co. v. Kentucky,* 234 U.S. 579, 585; *Fielding* v. *Superior Court,* 111 Cal. App. 2d 490, 496, 244 P.2d 968, 972. But the 1957 enactment left a hiatus should a corporation carrying on interstate commerce in the Territory thereafter absent itself, leaving no officer or managing agent here. The 1957 Act knocked out the foundation, namely section 174-2, upon which service of process had rested in such cases under section 172-150, and the legislature failed to substitute another until 1965.[6] It does not rest with us to supply the deficiency. Similarly in California, under a statute providing for service on a withdrawn corporation by serving a state officer if the corporation had transacted intrastate business in California, it was held that service could not be effected on a corporation engaged solely in interstate business after it ceased to do business in the state. *Detsch & Co.* v. *Calbar, Inc.,* 228 Cal. App. 2d 556, 566-67, 39 Cal. Rptr. 626, 633. While it has been suggested that this California statute is more stringent than constitutionally required (5 Stan. L. Rev. 503, 510; 31 So. Cal. L. Rev. 339, 355-56), the court perforce has followed it in California, as we must follow our statute.

One could hardly find a clearer statement of legislative intent than the provision for cancellation of registrations on file under section 174-2, containing designations of

---

[5] *But cf., Andreas* v. *Imperial Airlines, Inc.,* 211 F. Supp. 311 (E.D. Penn.) ; *State* v. *Ford Motor Co.,* 208 S.C. 379, 38 S.E.2d 242, 247-49. And see *McWhorter* v. *Anchor Serum Co.,* 72 F. Supp. 437, 440 (W.D. Ark.).

[6] By S.L. 1965, c. 134, the legislature enacted a "long-arm" statute, as above noted.

agents for service of process.[7] And in enacting at the same time paragraph (i) of section 174-7.5,[8] providing that a corporation transacting any business in interstate commerce should not by reason thereof come under any provision of chapter 174, the legislature precluded the possibility that corporations formerly covered by section 174-2 thereafter would come under section 174-1.

What kind of business formerly came under section 174-2? This section related to the kind of business which, even if it constituted doing business in the Territory, was protected from the burdensome requirements of annual $100 license fees,[9] deprivation of the right of suit as a penalty for failure to qualify,[10] and the like. *Cf., Cannell & Chaffin* v. *Deering,* 26 Haw. 74. We are confronted here

---

[7] It has been argued that only those who had registered were affected by this provision. We cannot agree. This provision demonstrated the legislature's intention not to continue to provide for service of process on an agent designated by or pursuant to statutory requirements, if the corporation was engaged solely in interstate commerce.

[8] Section 174-7.5 evidently was taken from the Model Business Corporation Act. This model act has to do with the question of what foreign corporations are required to qualify at the risk of incurring penalties. It is not determinative of what activities may subject a foreign corporation to service of process under a proper statute or rule. Model Bus. Corp. Act Annot., § 99 at 566. But from 1957 to 1965, there was no provision in Hawaii for substituted service of process on a broader basis than that afforded by the provisions governing qualification. The model act itself, section 108, merely provides for service on a corporation that has qualified. Model Bus. Corp. Act Annot., § 108 at 620. *Cf., Hill* v. *Electronics Corp. of America,* 253 Iowa 581, 113 N.W.2d 313, 316-18. We note that Alaska found a broad basis for service in a 1960 amendment of section 108 of its act, which was originally adopted in the terms of section 108 of the model act. *Northern Supply, Inc.* v. *Curtiss-Wright Corp.,* 397 P.2d 1013 (Alaska 1965); *Stephenson* v. *Duriron Co.,* 401 P.2d 423 (Alaska 1965). Our legislature did not adopt section 108 of the model act, and we have no occasion to say whether we agree with Alaska's interpretation that introduction therein of a provision relating to foreign corporations "not authorized to transact business in Alaska but doing so" showed "the legislature's intent to expand the scope of jurisdiction to cover situations where a foreign corporation was in fact transacting business in the state, whether or not the business was of such a nature as to require the corporation to obtain a certificate of authority under state law." 397 P.2d at 1016.

[9] See *In re Taxes, Armstrong Perry,* 46 Haw. 269, 278, 379 P.2d 336, 341.

[10] See *Sioux Remedy Co.* v. *Cope,* 235 U.S. 197.

with the sole question whether petitioner's business in this State was business of that character. Even though we may see no reason why liability to service of process in a suit based on a cause of action arising in the State should turn, for example, on the question of liability to annual license fees, that was the result attaching under the provisions of Act 315, S.L. 1957.

The difficulty encountered by respondents is that the legislature in 1957 accepted the view that it was unconstitutional to require the registration of a corporation whose business in the Territory was exclusively interstate commerce, even though no penalty was attached to a failure to register other than liability to service through filing with a state officer. A number of state courts have narrowly construed statutes providing for substituted service on a state officer, apparently in the belief that the constitutional protection of interstate commerce required such narrow construction, though more recent decisions indicate that it may not have been constitutionally required. *Cf.*, the following case under the Massachusetts statute, *Pulson* v. *American Rolling Mill Co.,* 170 F.2d 193 (1st Cir.). Compare the following cases under the Arkansas statute, *i.e., Aldridge* v. *Marco Chem. Co.,* 234 Ark. 1080, 356 S.W.2d 615, 621, overruling *Rodgers* v. *Howard,* 215 Ark. 43, 218 S.W.2d 240, 242, which had been followed in *Ark-La Feed & Fertilizer Co.* v. *Marco Chem. Co.,* 292 F.2d 197, 202. In some instances, a statutory provision for service on a state officer has been applied though the business of the corporation was exclusively interstate commerce, and such service has been upheld where the circumstances were such as to come within the statute. *Cf.,* the following cases under the Pennsylvania statute, *i.e., Andreas* v. *Imperial Airlines, Inc., supra,* 211 F. Supp. 311 (E.D. Penn.), and *Rufo* v. *Bastian-Blessing Co.,* 405 Pa. 12, 173 A.2d 123; and under the

South Carolina statute, *State* v. *Ford Motor Co., supra,* 208 S.C. 379, 38 S.E.2d 242, 247-49. But since the legislature in 1957 accepted the narrow view of the early decisions, we have no choice in the matter.

The decision below construed section 172-150 as providing for service on any foreign corporation that constitutionally could be served, irrespective of the applicability of section 174-1 or 174-2. Under our reading of section 172-150 a different question is presented, namely whether petitioner formerly came under section 174-2, if at all governed by chapter 174, and hence was excluded from the operation of section 172-150 by the amendments above reviewed. We deem applicable the line of cases stemming from *York Mfg. Co.* v. *Colley,* 247 U.S. 21, represented by the following, the first two of which relate to the installation of elevators shipped into the State from outside the State, *i.e., Metal Door & Trim Co.* v. *Hunt,* 170 Okla. 240, 39 P.2d 72; *Haughton Elevator & Mach. Co.* v. *Detroit Candy Co.,* 156 Mich. 25, 120 N.W. 18; *Proctor & Schwartz* v. *Superior Court,* 99 Cal. App. 2d 376, 221 P.2d 972; *Combustion Eng'r, Inc.* v. *Arizona State Tax Comm'n,* 91 Ariz. 253, 371 P.2d 879; *Brandtjen & Kluge, Inc.* v. *Nanson,* 9 Wash. 2d 362, 115 P.2d 731; *Hess Warming & Ventilating Co.* v. *Burlington Grain Elevator Co.,* 280 Mo. 163, 217 S.W. 493.

*York* states the criteria applicable here. If the installation of machinery bears a "relevant" or "appropriate" relation to the contract made for its sale the transaction does not lose its interstate character by reason of the installation. A court must ask itself whether the "intrinsic value [of the machinery] largely depends upon its being united and made operative as a whole." The "functions of the machinery," "its complexity," and "the necessity of its aggregation and unison with mechanical skill and precision in order that the result of the contract of sale * * * might come into existence" are to be considered

as bearing on the appropriateness of including in the contract a provision for installation by the seller. 247 U.S. at 25. On the other hand these factors will not serve to obscure the intrastate character which the business at least partially takes on where the seller undertakes the performance of such functions as the digging of many miles of ditches, as in *General Ry. Signal Co.* v. *Virginia,* 246 U.S. 500.

In answer to a question presented by this court[11] respondents filed a memorandum in which they distinguish *York Mfg. Co.* v. *Colley, supra,* 247 U.S. 21, and rely upon the principles stated in *General Ry. Signal Co.* v. *Virginia, supra,* 246 U.S. 500; *Browning* v. *Waycross,* 233 U.S. 16, and *Caldwell* v. *North Carolina,* 187 U.S. 622. Relying upon the findings of the court below, respondents emphasize that the agreement provided for complete installation by the seller and not merely for supervision by an expert furnished by the seller. They also assert, though there are no findings on the point, that local labor was hired and materials were locally purchased by the seller. But these are not criteria in themselves. They simply bear on the main question. In short, the incidental nature of the work performed in the State by the seller is the test.

Respondents also cite *Beach* v. *Kerr Turbine Co.,* 243 Fed. 706 (N.D. Ohio), but that case antedated *York Mfg. Co.* v. *Colley, supra,* 247 U.S. 21, as did *S. R. Smythe Co.* v. *Ft. Worth Glass & Sand Co.,* 105 Tex. 8, 142 S.W. 1157. *United States Constr. Co.* v. *Hamilton Nat'l Bank,* 73 Ind.

---

[11] The court called for additional briefing on the following point:

"It having been contended by respondents 'that the subject action in the lower court is one which arose directly out of the petitioner's activity which took place within the State of Hawaii, said activity being the negligent installation of an elevator in the Waikiki Biltmore Hotel in Honolulu; that the record shows that the activity took place over several months and was under the direct control of petitioner'; and it having been contended by petitioner that, even if such be the case, R.L.H. 1955, § 174-7.5(i) (Supp. 1963), is fatal to the claim of jurisdiction—assuming without deciding that such section 174-7.5(i) is or may be pertinent, does the activity in question come within its scope?"

App. 149, 126 N.E. 866, cited *Browning* v. *Waycross Co., supra,* and *General Ry. Signal Co.* v. *Virginia, supra,* but did not consider *York.* In *National Refrigerator Co.* v. *Southwest Missouri Light Co.,* 288 Mo. 290, 231 S.W. 930, the court distinguished *York Mfg. Co.* v. *Colley, supra,* 247 U.S. 21, on factual grounds, but the facts here are insufficient. As to *Bryan* v. *S. F. Bowser & Co.,* 209 S.W. 189 (Tex. App.), and *American Amusement Co.* v. *East Lake Chutes Co.,* 174 Ala. 526, 56 So. 961, the remaining cases cited by respondents on this question, we do not find the reasoning of these cases persuasive. The Texas case cited the state court's decision in *York Mfg. Co.* v. *Colley, supra,* 172 S.W. 206, apparently overlooking the overruling of that decision by the United States Supreme Court in the leading case above cited, 247 U.S. 21, and the Alabama case was decided before *York Mfg. Co.*

As plaintiffs in the circuit court, respondents had the burden of sustaining the court's jurisdiction over petitioner. *Victory Carriers, Inc.* v. *Hawkins,* 44 Haw. 250, 259, 352 P.2d 314, 320; *Proctor & Schwartz, Inc.* v. *Superior Court, supra,* 99 Cal. App. 2d 376, 221 P.2d 972, 974.[12] On the record before us, respondents have not sustained that burden of proof. The mere fact that the installation took several months cannot be said to be decisive.[13] It is manifest that the findings of the court below

---

[12] As stated in *Victory Carriers, Inc.* v. *Hawkins, supra,* when a defendant adduces sufficient evidence to put in issue the question of jurisdiction over the person, the burden of establishing jurisdiction shifts to the plaintiff. Here petitioner, as defendant below, put the question of jurisdiction in issue by an affidavit showing that its only connection with Hawaii was with respect to the installation of a single elevator in 1955.

[13] Paragraph (j) of section 174-7.5, the new section enacted by Act 315, S.L. 1957, provides that "conducting an isolated transaction completed within a period of thirty days and not in the course of a number of repeated transactions of like nature" shall not be considered to be doing or carrying on business in the State. The court's findings of fact sustain respondents insofar as this paragraph is concerned, but are not decisive in respect to paragraph (i) of the same section which relates to the transacting of business in interstate commerce.

are inadequate. The court below did not address itself to the factual questions which, on a correct reading of section 172-150, are presented. Due to its interpretation of section 172-150 the court directed its consideration of the facts to the question whether, as a matter of constitutional law, petitioner had had "the minimal contact with the State necessary to sustain the jurisdiction of this court." No finding has been made that petitioner, in 1955 or at any other time, was within the ambit of section 174-1 as a corporation whose business was partly intrastate. Under the terms of section 172-150 that was requisite in order for service to be made on the Director of Regulatory Agencies.

Respondents made in this court a motion to supplement the record. We took this motion under advisement and now rule that the motion will be treated as an offer of proof as to further evidence that could be adduced in the trial court in support of jurisdiction. The proffered evidence would tend to show that Belle Haven, the builder of the Waikiki Biltmore, arranged with petitioner for the installation of the elevator some time after the hotel was built, having made provision at the time of construction for an additional elevator, for freight; that the elevator equipment was shipped to the Waikiki Biltmore from California pursuant to the contract on August 31, 1955; and that Belle Haven made the contract payments in California through its office there, except for payments for materials and services locally obtained and used in the installation, which payments were made by Belle Haven in Hawaii and credited on the contract price. It further would tend to show that on the date of shipment petitioner billed Belle Haven for "1-Geared Electric Elevator to be installed at Waikiki Biltmore—Contract price on elevator—$19,770.00. Due upon shipment of all elevator equipment, 50% of contract price $9,885.00," and that

this sum of $9,885 was paid in installments. Nothing appears as to how the remainder of the contract price was paid, or as to the amount credited for materials and services paid for by Belle Haven in Hawaii. While incomplete in these and other respects the offer of proof does tend to show that further evidence is available bearing on the application of the criteria of *York Mfg. Co.* v. *Colley, supra,* 247 U.S. 21.

The ruling of the court below denying petitioner's motion to dismiss was interlocutory and subject to reconsideration. It still is subject to reconsideration by the circuit court unless our writ not only reverses the circuit court but also takes the matter out of the circuit court's hands and grants petitioner's motion. A writ in the form prayed for would have that effect, for petitioner has asked for a writ forever restraining the further prosecution of respondents' action with respect to petitioner. A writ in such form is not appropriate. *Cf., Dole* v. *Gear,* 14 Haw. 554, 567.

In the first place, we have made no decision that the action should be dismissed as to petitioner or that the summons should be quashed; petitioner's motion for dismissal sought both but we make no holding as to either. Under our interpretation of R.L.H. 1955, § 172-150, the issue before us is the narrow one of the validity of the service of summons.[14] In the second place, our holding on this point is only that the validity of the service of summons has not been supported. We make no holding that it cannot be supported. In the third place the factual issues, now that we have identified them, are for the circuit court to resolve.

Where, as here, a writ of prohibition is sought on the ground that the lower court has wrongly decided the

---

[14] See *Bolger* v. *Dial-A-Style Leasing Corp.,* 409 P.2d 517, 518 (Colo.).

question of jurisdiction over the person of the petitioner, prohibition lies for the purpose of preventing the expense, vexation and annoyance of an unauthorized proceeding, since appeal is a matter of right only at the conclusion of the proceeding, after judgment. Prohibition does not lie for the purpose of cutting off a right to further consideration which respondents would have had if a ruling in their favor had been reversed on appeal. Had the matter come up on appeal the case would have been remanded for reconsideration of petitioner's motion, including the taking of further evidence. *Cf., Tugaeff* v. *Tugaeff,* 42 Haw. 455, 473.

Under the circumstances petitioner is entitled only to a writ restraining further prosecution of the action against petitioner on the basis of the circuit court's decision of December 10, 1964 and order of December 31, 1964, it being our intention that reaffirmation of jurisdiction in the event proper evidence is adduced which calls for that result shall not be restrained, nor shall the writ restrain the taking of such steps as respondents may see fit in an endeavor to effect service by other means, as to the validity of which no opinion has been expressed. In accordance with the understanding of the parties the writ will operate as well in respect to the prosecution of the City and County's cross-claim.

*Willson C. Moore, Jr.* (*Harold W. Nickelsen,* and *Leo J. Walcom* of San Francisco, with him on the briefs, *Henshaw, Conroy & Hamilton,* and *Walcom & Harmon* of San Francisco, of counsel), for petitioner.

*A. Singleton Cagle* (*Smith, Wild, Beebe & Cades* of counsel) for respondents.

*William Yim,* Deputy Corporation Counsel, City and County of Honolulu, was present but did not argue.

## DISSENTING OPINION BY MIZUHA, J.

I am not in agreement with the statement in the majority opinion that since the "legislature in 1957 accepted the view that it was unconstitutional to require the registration of a corporation whose business in the Territory was exclusively interstate commerce" it has "accepted the narrow view of the early decisions" wherein "a number of state courts have narrowly construed statutes providing for substituted service on a state officer, apparently in the belief that the constitutional protection of interstate commerce required such narrow construction, * * *."

The Standing Committee Report No. 334 on S.B. 609 which became Act 315, S.L. 1957 (S. Jour. 1957, pp. 544-45) stated that section 174-2 "was testified to as being unconstitutional." It further stated that "Creditors will not be affected as the corporations can be sued in our courts." But the statement in the majority opinion: "This of course was true as long as the corporation remained in the Territory," does not follow as a matter of course. The main contention of respondent is that service of process can be made upon petitioner, if it were doing business in this State, under the provisions of section 174-1 and section 172-150.

The repeal of section 174-2 was unnecessary. It was a "long arm" statute for service of process upon foreign corporations similar to S.L. 1965, c. 134. However, the legislature in 1957 in an abundance of caution may have accepted the testimony that the domestication provisions of section 174-2 were unconstitutional and believed that it was unnecessary and burdensome for a foreign corporation, as a condition of engaging within the State solely in interstate commerce, to file the registration statement required in said section.

But the repeal of section 174-2 cannot be construed as acceptance by the 1957 legislature, the architects of a new

Hawaii, of "the narrow view of the early decisions" defining what is doing business in a state, thereby narrowing the scope of jurisdiction where the question is whether a foreign corporation is amenable to legal process.

The repeal of section 174-2 may have "left a hiatus should a corporation carrying on interstate commerce in the Territory thereafter absent itself, leaving no officer or managing agent here." But that is true only in situations where the foreign corporation was engaged solely in interstate commerce, without doing business in this State. It is unnecessary for us to supply a deficiency which does not exist. There are facts from which the lower court determined that the petitioner was doing business in this State under the provisions of section 174-1 and therefore amenable to service of process under 172-150.

*Detsch & Co.* v. *Calbar, Inc.,* 228 Cal. App. 2d 556, 556-57, 39 Cal. Rptr. 626, 633, cited in the majority opinion is not applicable to this case. The relevant statute under which the foreign corporation was served was Corporations Code, section 6504, which provided in part: "A foreign corporation which has transacted *intrastate business* in this State and has thereafter withdrawn from business in this State may be served with process in the manner provided in this chapter in any action brought in this State *arising out of such business,* whether or not it has ever complied with the requirements of Chapter 3 of this part." (Emphasis theirs). The case was decided on the narrow definition given to "transacting intrastate business" by Corporations Code, section 6203 which defined the term as "entering into *repeated and successive transactions of its business* in this State, other than interstate or foreign commerce." (Emphasis added). We do not have a statute similar to Corporations Code, section 6203 and are not restricted to such a narrow definition in determining whether a foreign corporation, engaged in inter-

state business, is also doing business in this State thereby subjecting itself to process under the provisions of sections 174-1 and 172-150. See *S. Howes Co.* v. *W. P. Milling Co.,* 277 P.2d 655 (Okla. 1954), *appeal dismissed,* 348 U.S. 983.

At the time the legislature repealed 174-2 in 1957 it also added section 174-7.5, R.L.H. 1955 (Supp. 1963) which provides, among others, that a foreign corporation "shall not be considered to be doing or carrying on business in the State for the purposes of this chapter [chapter 174, R.L.H. 1955] by reason of carrying on in the State any one or more of the following activities:

\* \* \* \* \* \* \* \* \*

"(i) Transacting any business in interstate commerce.

"(j) Conducting an isolated transaction completed within a period of thirty days and not in the course of a number of repeated transactions of like nature."

The activities of foreign corporations mentioned in this section are definite restrictions on the power of this State to require foreign corporations to qualify under the provisions of section 174-1. By the repeal of section 174-2, it does not follow that foreign corporations "transacting business in interstate commerce" may not also transact business in the State under the provisions of section 174-1.

By specifically listing in section 174-7.5 the activities of a foreign corporation which do not constitute doing or carrying on business in this State, the legislature clearly recognized that a corporation may be doing business in this State although ordinarily engaged in interstate business. See *infra,* pp. 16, 17.

We are not concerned here as to what kind of business came under section 174-2. The main issue is whether petitioner was doing business in this State under the provisions of section 174-1.

I do not construe the decision below as noted in the majority opinion that "section 172-150 [provides] for service on any foreign corporation that constitutionally could be served, irrespective of the applicability of section 174-1 or 174-2," nor do I agree with the conclusion that the lower court in finding jurisdiction did not hold that petitioner in 1955 was doing business in this State for service of process to be effective under section 172-150. A careful reading of the "Decision on Motion to Dismiss" and the record indicates that there is no specific reference to section 174-2 in the Decision. In support of its motion to dismiss, petitioner specifically placed in issue the applicability of section 174-1 as follows: "It is apparent that at the time of the isolated transaction by ATLAS ELEVATOR COMPANY, it was not required to file or register with the State of Hawaii, pursuant to the provisions of section 174-1 then in effect," citing the applicable provisions. It is apparent from the record and decision that the trial court considered whether petitioner was doing business under the provisions of section 174-1 since it found that "ATLAS contracted with the Belle Haven Realty Co. to install the subject elevator in the Waikiki Biltmore Hotel in Honolulu. This contract was made in California and was to be performed in Hawaii. The elevator was installed sometime during the period between March and December of 1955. The installation of the elevator was subject to the provisions of the then current elevator code promulgated and enforced by the local government." Thus, "it appears to the Court that ATLAS had the responsibility for the installation of the elevator and that this work was an activity which was regulated by the police power of the local government. The record indicates that the time necessary to accomplish the work involved several months, and therefore it would appear that ATLAS enjoyed the protection of the State of Hawaii

for a considerable period of time while engaging in an activity in furtherance of its own interests."

The decision further states: "Objection is made to the service on the ground that the activity of ATLAS may not be classified as 'doing business' in Hawaii within the meaning of Chapter 174, RLH 1955, which was the law applicable to the parties at the time of the installation." The decision then referred to another First Circuit Court case *Blackburn* v. *Honolulu Gas Co.,* Civil No. 11257, where the court stated that section 172-150, R.L.H. 1955, permitted " * * * service upon a foreign corporation by filing a copy of the process with the 'treasurer' to the fullest extent which is constitutionally permissible, and is not limited solely to those corporations who are required to comply with Chapter 174, RLH 1955, but have neglected 'to do so.' " The lower court concluded that "the service of the complaint and summons on ATLAS pursuant to the provisions of Section 172-150, RLH 1955, was good and that the motion should be denied." From the trial court's careful examination of the specific ground relied upon by the petitioner in support of the motion to quash, the detailed enumeration of the activities of petitioner in this State, and the reference to the manner of service under section 172-150 and the holding that such service was good, there is only one conclusion: the trial court found that petitioner was doing business in this State, and hence, service of process was effective under the provisions of section 172-150, since petitioner had neglected to file with the Director of Regulatory Agencies. Section 174-2 was never considered. The court couldn't. It was repealed in 1957.

The majority opinion has failed to distinguish between cases where the question is the "necessity of domesticating before bringing suit, and cases where the question is whether the foreign corporation is amenable to legal

process. The standards are not the same, and the quality, character, and quantity of business conducted within the state may be sufficient to subject a foreign corporation to process and yet be insufficient to require it to take out a license. * * * Such corporations may be doing business within the state so as to be subject to the jurisdiction of the local courts and yet not be subject to a statute prescribing conditions of their doing business within the state. The basis of the distinction is that the power of the state to subject a foreign corporation to local regulations is restricted by the commerce clause of the Federal Constitution, but that a state may subject such a corporation which is doing business in the state to service of process therein notwithstanding the fact that the local activities of the corporation are confined to transactions in interstate commerce. *International Harvester Co.* v. *Kentucky,* 234 U.S. 579, * * *." *Wills* v. *National Mineral Co.,* 176 Okla. 193, 55 P.2d 449, 452; *S. Howes Co.* v. *W. P. Milling Co., supra,* 277 P.2d 655 (Okla. 1954), *appeal dismissed,* 348 U.S. 983; *Superior Distributing Corp.* v. *Hargrove,* 312 P.2d 893 (Okla. 1957). See Note, 45 Mich. L. Rev. 218-21 (1946); Isaacs, *An Analysis of Doing Business,* 25 Colum. L. Rev. 1018, 1024-27 (1925); Note, 16 U. Chi. L. Rev. 523-25 (1949); Case Notes, 26 So. Cal. L. Rev. 215-16 (1953).

In *S. Howes Co.* v. *W. P. Milling Co., supra,* defendant was a foreign corporation not domesticated in the State of Oklahoma and service of summons was had upon it by service on the Secretary of State under statutes similar to sections 174-1 and 172-150, R.L.H. 1955. Defendant objected to the jurisdiction of the court over it because it was a foreign corporation. The plaintiff, a Muskogee, Oklahoma company, purchased a corn with cob and husk separator from defendant through an independent broker, Ward R. McGavren, in Oklahoma. The

machine was guaranteed by defendant. McGavren, in collaboration with the defendant, gave detailed instructions to the plaintiff for the construction of an elevator and shuck house. Plaintiff built these structures in conformity with the instructions. McGavren was in Muskogee when the machine was installed. After the installation was completed, the machine was put into operation, and, within a few hours, the shucks were set on fire by friction and carried into the shuck house while still burning. The resulting fire destroyed the shuck house. McGavren was notified, and he went to Muskogee, where the machine was started and another fire began. After investigation by a salesman of defendant from Kansas City, defendant sent other fans to be substituted in the mill. The trouble was not eliminated and plaintiff sued for damages.

Defendant argued that the factual situation indicated only an isolated transaction, or a single transaction not continuous in nature; therefore, it was not "doing business" within the State of Oklahoma and was not subject to local process. The Oklahoma court stated:

"* * * Such argument is not based upon reason and justice. Courts of a particular state should have jurisdiction over all disputes arising out of contracts made (or to be performed) within the state, regardless of the number of contracts of the defendant which were made (or to be performed) there. Moreover, the test as to what activities will subject the foreign corporation to suit is 'qualitative' not simply 'mechanical' or 'quantitative'. *Marlow* v. *Hinman Milking Machine Co.,* D.C., 7 F.R.D. 751, 753, and cases cited therein. Therein it was said that the question is whether defendant was 'doing business' not the number of transactions or length of time it was doing business. The defendant there was a foreign corporation whose agents solicited orders for milking machines, which

were shipped by the corporation from its factory located in another state. Its agents advised with the purchasers how to use, or operate the machines and sometimes made minor repairs. There the facts were held sufficient to constitute 'doing business' within the state. * * *" *S. Howes Co.* v. *W. P. Milling Co.,* 277 P.2d 655, 657-58.

The Oklahoma court had no difficulty in holding that the foreign corporation was "engaging in or transacting business" within the state "as to be sued in this state and service of process obtained upon it." It further stated at 657:

"* * * Whenever the question has been raised of whether a corporation's activities within the meaning of these statutes constitutes 'doing business' (a term not defined by statute) this Court has held almost without exception that the corporation was liable to local process. * * * The multiple standard for 'doing business' is categorically stated to be the law in 20 C.J.S., Corporations, § 1828, and was recognized in the Wills case, supra [*Wills* v. *National Mineral Co., supra,* 176 Okla. 193, 55 P.2d 449]."

In *Northern Supply, Inc.* v. *Curtiss-Wright Corp.,* 397 P.2d 1013 (Alaska 1965), a foreign corporation was the manufacturer of a road scraper sold in Alaska by an Alaskan corporation to Wright Tractors & Tractor Service, Inc. In litigation between Wright and the Alaskan corporation, the former claimed that the scraper was defective and that the Alaskan corporation had breached its warranty as to the condition of the scraper. The Alaskan corporation filed a third party complaint against the foreign corporation contending that if there had been a breach of warranty, the foreign corporation and not the Alaskan corporation was responsible. Since there was no officer or agent of the foreign corporation in Alaska upon

whom process could be served, service of the third party complaint and summons was made by delivering copies to the State Commissioner of Commerce in accordance with rule and statute.

The statute, AS 10.05.642 provided in part: "When a foreign corporation authorized to transact business in the state, or not authorized to transact business in the state but doing so, fails to appoint or maintain a registered agent in the state, or when a registered agent cannot with reasonable diligence be found at the registered office, * * *, the commissioner is an agent upon whom process, notice, or demand may be served. * * *" The question was whether the alleged breach of warranty as to the condition of the road scraper, sold by the Alaskan corporation to Wright, was so connected with the transaction of business in the state by the foreign corporation as to bring AS 10.05.642 into operation. Between April 1960 and September 1962 there was in effect a distribution sales and service agreement between the Alaskan corporation and the foreign corporation. The Alaskan corporation was given exclusive right to sell the foreign corporation's earth moving equipment and parts and accessories in Alaska. While the agreement was still in effect, the Alaskan corporation ordered three road scrapers from the foreign corporation. One scraper was sold by the Alaskan corporation to Wright. A representative of the foreign corporation came to Alaska to aid and assist in the sale of the scraper.

The Alaskan court did not hesitate in finding that the foreign corporation carried on or transacted business in Alaska within the meaning of AS 10.05.642 when it entered into the distribution agreement with the Alaskan corporation, selling it a scraper pursuant to that agreement. The court held: "We construe that statute as having for its purpose the providing of a local forum for

residents of the state who have a grievance against a foreign corporation growing out of its business activities within the State." *Northern Supply, Inc.* v. *Curtiss-Wright Corp., supra* at 1015.

The foreign corporation argued that its activities did not amount to transaction of business in Alaska because the provisions of AS 10.05.600, which is similar to our section 174-7.5, limited the scope of the words "transact business" as used in AS 10.05.642. In answer to this contention the Alaska court stated: "The activities mentioned in AS 10.05.600 pertain only to the transaction of business as it relates to the power of the state to require the foreign corporation to obtain a certificate of authority to transact business in the state. AS 10.05.600 does not pertain to those activities which may subject a foreign corporation to the jurisdiction of our courts under AS 10.05.642." *Northern Supply, Inc.* v. *Curtiss-Wright Corp., supra* at 1015.[1]

The Alaska court also noted that prior to 1960 AS 10.05.642, following section 108 of 2 Model Business Corporation Act, Annot., p. 605 (1960), did not provide for the exercise of jurisdiction in cases where a foreign corporation actually transacted business in Alaska but was not authorized to do so under statutory provisions for obtaining such authorization. In 1960, AS 10.05.642 was amended by adding the words "or not authorized to transact business in Alaska but doing so" and the court construed the broad language as "showing the legislature's intent to expand the scope of jurisdiction to cover situations where a foreign corporation was in fact transacting

---

[1] The court noted that this was the interpretation given to section 99 of the Model Business Corporation Act, from which AS 10.05.600 was taken. The comment to section 99 states: "* * * Section 99 does not deal with the determination of what activities may subject a foreign corporation to service of process or local taxation." 2 Model Business Corporation Act, Annot., § 99, p. 566 (1960).

business in the state, whether or not the business was of such a nature as to require the corporation to obtain a certificate of authority under state law." *Northern Supply, Inc.* v. *Curtiss-Wright Corp., supra* at 1016.

The position taken by the majority opinion is similar to that taken by courts which are concerned with the question whether the state may impose restrictions upon interstate commerce or pass laws which amount to the regulation of such commerce. But that is not the question before us. We are concerned with the question of whether the process of our State courts may reach a foreign corporation which has transacted business in our State even though the transaction stems from interstate commerce.

Elcanon Isaacs in *An Analysis of Doing Business*, 25 Colum. L. Rev. 1018, 1024-27 (1925), distinguishes the degrees of "doing business" under three legal purposes, *i.e.,* service of process, taxation and qualification, the degree of activity required rising in the order named.

Whenever domestication is the issue, the courts have insisted that a foreign corporation must be doing business at a high level since the State dictates the manner in which it is to be licensed, and failure to comply may result in penalties as well as denial of the corporation's right to sue. But when service of process is the question, the decisions have been almost unanimous in lowering the degree of doing business to permit service of process.

This double standard between "doing business" which will bring a foreign corporation within a state court's jurisdiction and "doing business" necessary to subject a corporation to domestication has been applied by most courts. *Liquid Veneer Corp.* v. *Smuckler,* 90 F.2d 196 (9th Cir. 1937); *Wills* v. *National Mineral Co., supra,* 176 Okla. 193, 55 P.2d 449; *Webster* v. *Doane,* 137 Misc. 513, 241 N.Y.Supp. 242; *Atkinson* v. *United States Operating Co.,* 129 Minn. 232, 152 N.W. 410; *Remington Rand*

*Inc.* v. *Knapp-Monarch Co.,* 139 F. Supp. 613, 617 (E.D. Penn. 1956) ; *Klein* v. *Sunbeam Corp.,* Super., 47 Del. 485, 93 A.2d 732; *Filmakers Releasing Organization* v. *Realart Pictures of St. Louis, Inc.,* 374 S.W.2d 535, 539 (Mo. 1964) ; *Malavasi* v. *Villavecchia,* 62 N.J. Super. 510, 163 A.2d 214; *Knight Products, Inc.* v. *Donnen-Fuel Co.,* 20 N.Y.S.2d 135, 139-40; *Sperling* v. *McGee,* 49 N.Y.S.2d 477, *aff'd,* 268 App. Div. 925, 51 N.Y.S.2d 274; *Suss* v. *Durable Knit Corp.,* 4 Misc. 2d 666, 147 N.Y.S.2d 363; *William L. Bonnell Co.* v. *Katz,* 23 Misc. 2d 1028, 196 N.Y.S.2d 763; *S. Howes Co.* v. *W. P. Milling Co., supra,* 277 P.2d 655, *appeal dismissed,* 348 U.S. 983; *Commonwealth* v. *Andrews,* 42 Pa. D. & C. 505; *State* v. *Ford Motor Co.,* 208 S.C. 279, 38 S.E.2d 242; *Northern Supply, Inc.* v. *Curtiss-Wright Corp., supra;* see *Tauza* v. *Susquehanna Coal Co.,* 220 N.Y. 259, 115 N.E. 915.

I cannot reconcile the approach followed by the majority opinion in view of the expressed opinion of the United States Supreme Court that it will accept the decisions of state courts as to what constitutes the doing of business in the state within the meaning of its laws, but will determine for itself whether a foreign corporation's business was interstate and whether local enactments as applied are repugnant to the commerce clause. *Kansas City Steel Co.* v. *Arkansas,* 269 U.S. 148, 150.

The interstate commerce clause has been successfully used by foreign corporations as a magic wand in avoiding jurisdiction by the state courts in the past, but the door has been closed in many phases of state litigation on this defense, especially in tort law. I am amazed that this court is willing to bow to the theory that state jurisdiction in a tort suit by a resident of this city for the alleged negligence of a foreign corporation in the installation of an elevator which took three to four months, will depend on a measured degree of activity—such as whether

a foreign corporation dug "many miles of ditches" as in *General Ry. Signal Co. v. Virginia,* 246 U.S. 500.

The criteria of *York Mfg. Co. v. Colley,* 247 U.S. 21, is inapplicable here. The manner in which the case was brought to the Supreme Court of the United States is significant. In *York Mfg. Co. v. Colley, supra,* the Supreme Court invoked the interstate commerce clause to strike down an attempt by the State of Texas to deny a foreign corporation the right to sue in its courts to collect a just debt for the sale of ice making machinery to Texas residents. The same reasoning and analysis was applied to the license fees and taxes imposed upon interstate commerce by states or municipalities in *Caldwell* v. *North Carolina,* 187 U.S. 622; *Rearick* v. *Pennsylvania,* 203 U.S. 507; *Dozier* v. *Alabama,* 218 U.S. 124.

The main problem raised by this petition is whether the service upon petitioner, a foreign corporation, is within the constitutional requirements of due process. The test is in this case whether the corporation was doing business in this State at the time it installed the elevator, and whether or not the statute under which the corporation was served provides for a reasonable method of notification. *International Shoe Co.* v. *Washington,* 326 U.S. 310. Both tests have been met in the instant case.

I do not believe it was the intent of the 1957 legislature which repealed section 174-2 that a foreign corporation which took three months to install an elevator at Waikiki should be allowed to escape service of process, and that a resident should be forced to sue in foreign courts on a tort claim arising from the alleged negligent installation of the elevator.

There is a distinction between activities of a foreign corporation which will subject the corporation to the domestication requirement of section 174-1 and penalties under sections 174-8 to 174-14, and activities which will

bring the corporation within the jurisdiction of our courts in a tort suit by a resident of this State under sections 174-1 and 172-150. The term "doing business" for the purpose of subjecting a foreign corporation to the process of our State courts should be "measured by the outer limits of the due process clause of the federal constitution." *Northern Supply, Inc.* v. *Curtiss-Wright Corp.*, *supra* at 1017.

Hence, I cannot agree with the majority's application of the criteria used by *York Mfg. Co.* v. *Colley, supra,* in holding that the activities of the petitioner in this State as enumerated by the lower court in its decision is insufficient to confer jurisdiction under the provisions of sections 174-1 and 172-150, R.L.H. 1955.

I would dismiss the petition and discharge the alternate writ.