**Electronically Filed
Supreme Court
SCPW-23-0000076
18-OCT-2023
08:27 AM
Dkt. 60 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

---

WOMBLE BOND DICKINSON (US) LLP; SHOOK, HARDY & BACON L.L.P.; and COVINGTON & BURLING LLP, Petitioners,

vs.

THE HONORABLE ROBERT D.S. KIM,
Chief Judge of the Circuit Court of the Third Circuit,
State of Hawai'i, Respondent Judge,

and

MARVIN MANIOUS; VALERIE MANIOUS; R.J. REYNOLDS TOBACCO COMPANY; PHILIP MORRIS USA, INC.; LIGGETT GROUP LLC; GREENSPOON MARDER LLP; FOODLAND SUPER MARKET, LIMITED; J. HARA STORE, INC.; and WALMART INC., Respondents.

---

SCPW-23-0000076

ORIGINAL PROCEEDING
(CASE NO. 3CCV-22-0000072)

OCTOBER 18, 2023

RECKTENWALD, C.J., McKENNA, AND EDDINS, JJ.,
CIRCUIT JUDGE TONAKI IN PLACE OF NAKAYAMA, J., RECUSED, AND
CIRCUIT JUDGE MALINAO, IN PLACE OF WILSON, J., RECUSED

OPINION OF THE COURT BY EDDINS, J.

**I.**

Three law firms petition this court to order a judge to get them out of a case. They argue the Circuit Court of the Third Circuit lacks jurisdiction to hale them into Kona - side by side with the tobacco companies they long-counseled - in a products liability, fraud, and conspiracy suit.

The circuit court relied on conspiracy jurisdiction to invoke jurisdiction. Not only is that theory of specific personal jurisdiction unconstitutional, the law firms maintain, but this court has never endorsed conspiracy jurisdiction. And we shouldn't now. But if we did, the court still lacks jurisdiction - the pleadings and the evidence produced at a Hawai'i Rules of Civil Procedure Rule 12(b)(2) motion to dismiss were insufficient.

We adopt conspiracy jurisdiction. Still, the circuit court lacked personal jurisdiction. The law firms are out.

**II.**

In March 2022, Marvin Manious and Valerie Manious (plaintiffs) sued ten defendants: Philip Morris USA Inc. (Philip Morris); RJ Reynolds Tobacco Company (Reynolds); Liggett Group LLC (Liggett); Shook, Hardy & Bacon L.L.P. (Shook); Covington & Burling L.L.P. (Covington); Greenspoon Marder L.L.P.; Womble Bond Dickinson (US) L.L.P. (Womble); Foodland Super Market; J.

Hara Store; and Walmart.  The Maniouses filed their suit in the Circuit Court of the Third Circuit.

Plaintiffs are Hawai'i residents.  Marvin Manious has laryngeal cancer.  Smoking cigarettes caused his cancer, the Maniouses allege.  Those cigarettes were "designed, manufactured, advertised, marketed, distributed and/or sold" by Defendant R.J. Reynolds Tobacco Company.  Plaintiffs say Philip Morris, Reynolds, and Liggett advertised and marketed cigarettes in Hawai'i and that Foodland, J. Hara, and Walmart operated retail outlets where Marvin Manious bought his cigarettes.

Plaintiffs brought product liability, fraud, and conspiracy claims against the cigarette manufacturers and retailers.  They also brought two conspiracy counts specifically against the law firms.

Why sue the law firms?  Plaintiffs allege the cigarette companies "utilized" the law firms as in-house and outside counsel to "conceal and misrepresent the harms of smoking cigarettes, secondhand smoke, . . . and the addictive qualities of nicotine."  Their complaint claims the cigarette companies hired the law firms beginning in the 1950s "to assist them in their conspiratorial activities which included to conceal and misrepresent the harms of smoking and its addictive nature to the public."

According to Plaintiffs, the law firms "played a central role in the creation and perpetuation of the conspiracy and the implementation of its fraudulent schemes throughout the United States as well as in Hawai'i." Plaintiffs say that the law firms oversaw scientific research, reviewed advertisements, and provided false testimony to government agents. They directed their conduct "throughout the United States, including to the State of Hawai'i."

Plaintiffs allege that the law firms orchestrated a conspiracy through an association known over time as the "Committee of Counsel." One count claims that the law firms conspired to commit fraudulent concealment: "As a direct and foreseeable result of the law firms' fraudulent conduct in assisting Philip Morris, RJ Reynolds, Liggett and their co-conspirators conceal the health effects and addictive nature of cigarettes, consumers in Hawai'i, including Marvin Manious, were not aware of the true harms and addictive nature of cigarettes."

The complaint alleges in another count that the law firms conspired to commit fraudulent misrepresentations. Factually, the complaint's fraudulent concealment and fraudulent misrepresentations counts are mirror images.

The law firms each moved to dismiss under Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b)(2) for "lack of jurisdiction over the person." They make similar, though not identical,

4

arguments for dismissal.  They contend that Hawai'i courts lack general and specific jurisdiction over them.

Plaintiffs counter that the complaint supports specific jurisdiction because it alleges that the law firms were engaged in a conspiracy with a goal to maximize the sale of cigarette products throughout the United States, including Hawai'i. Plaintiffs maintain that the law firms conspired with the cigarette companies and retailers to specifically target Hawai'i "with fraudulent advertisements and marketing materials, misinformation, and misleading statements."

Plaintiffs submitted 49 exhibits, totaling hundreds of pages, to back their position that the law firms "conspired with others to create a massive fraud that reached into Hawai'i."  And for the first time, Plaintiffs introduced conspiracy jurisdiction to support the court's specific personal jurisdiction.

Shook's reply memorandum points out that watermarks populate Plaintiffs' documents, meaning that "most of Plaintiffs' exhibits come from the searchable Truth Tobacco Industry Documents database."  That database is "[a]n archive of 14 million documents created by tobacco companies about their advertising, manufacturing, marketing, scientific research and political activities."  See

https://industrydocuments.ucsf.edu/tobacco/

[https://perma.cc/4UB8-HLT2].

In October 2022, the circuit court ruled it had jurisdiction over three of the law firms (Shook, Covington, and Womble). The court entered pithy orders denying the motions to dismiss. Conspiracy jurisdiction defeated the law firms' 12(b)(2) motions. "The Court finds and concludes that it may exercise personal jurisdiction . . . based on conspiracy jurisdiction." The court did not make minimum contacts findings or undertake any due process analysis.

The court granted without prejudice Greenspoon's motion to dismiss. Later, Plaintiffs and Greenspoon submitted a joint stipulation dismissing that law firm as a defendant with prejudice. The court signed off. Greenspoon was out.

The remaining law firms moved for leave to file an interlocutory appeal and stay the proceedings. The court denied those motions.

About one week later, the law firms petitioned this court. They request a writ of prohibition enjoining the circuit court from exercising personal jurisdiction over them, or alternatively for a writ of mandamus ordering dismissal for lack of personal jurisdiction. The law firms urge us to reject conspiracy jurisdiction as a way to invoke specific personal jurisdiction. But should we adopt conspiracy jurisdiction, it

does not operate to hale them into the third circuit, they maintain. The law firms' writ poses two questions:

> 1. Does a circuit court violate the Due Process Clause of the U.S. Constitution and thus exceed its jurisdiction when it purports to exercise personal jurisdiction over a defendant based on the "conspiracy theory of personal jurisdiction"?
>
> 2. Even if the "conspiracy theory of personal jurisdiction" were valid under current U.S. Supreme Court precedent, did the circuit court exceed its jurisdiction here where it purported to exercise personal jurisdiction over the Law Firms despite the absence of any evidence that substantial steps in furtherance of the conspiracy were taken in Hawai'i, or that the alleged conspiracy targeted Hawai'i?

We answer question 1 No.

We answer question 2 Yes.

**III.**

**A.**

To bring a defendant to our courts, a plaintiff must establish personal jurisdiction. Courts invoke personal jurisdiction through general or specific jurisdiction. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

The parties agree on one thing. There is no general jurisdiction.

There's no place other than home for general jurisdiction. A business entity has two home states: its place of incorporation and its principal place of business. BNSF Ry. Co. v. Tyrrell, 581 U.S. 402, 413 (2017). The law firms are not "at

7

home" in Hawai'i. See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021). Here, Shook is incorporated in Missouri, and has its principal place of business there. Covington is incorporated under Delaware law and has its principal place of business in the District of Columbia. Womble is incorporated in North Carolina, and has its principal place of business there.

Since the court lacks general jurisdiction, Plaintiffs must show specific jurisdiction.

**B.**

Hawai'i courts first consider whether Hawai'i Revised Statutes (HRS) § 634-35 (2016) allows specific jurisdiction. See Yamashita v. LG Chem, Ltd., 152 Hawai'i 19, 21, 518 P.3d 1169, 1171 (2022). Typically, Hawai'i's long-arm statute is not decisive. Instead, it blends into the due process analysis. Id. at 22, 518 P.3d at 1172. Hawai'i law "allows Hawai'i courts to invoke personal jurisdiction to the full extent permitted by the due process clause." Id. at 21, 518 P.3d at 1171.

Specific jurisdiction over out-of-state defendants is based on "minimum contacts." International Shoe Co. v. State of Wash. Off. of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945). To protect out-of-state actors' due process rights, courts rely on a three-part specific jurisdiction test: (1) the nonresident defendant must "purposefully avail[]" itself of the

8

privilege of conducting activities within the forum state; (2) plaintiff's claims "must arise out of or relate to the defendant's contacts" within the forum; and (3) the exercise of jurisdiction must "not offend traditional notions of fair play and substantial justice."  Ford Motor Co., 141 S. Ct. at 1024-25.

International Shoe still fits.  But Shoe's well-worn standards of "fair play," "justice," and "minimum contacts" clash with the way courts determined personal jurisdiction in the very old days.  See Pennoyer v. Neff, 95 U.S. 714, 733 (1877) (holding that courts lack jurisdiction over defendants who are not physically present in that state or who have not consented to jurisdiction).

Some justices hint that personal jurisdiction law should revert to the 19th century economy's "tag" rule.  See Ford Motor Co., 141 S. Ct. at 1038 (Gorsuch, J., concurring) (noting that courts could revive the "old 'tag' rule" to hale corporations into court); Mallory v. Norfolk S. Ry. Co., 143 S. Ct. 2028, 2040 (2023) (signaling that the original public meaning of personal jurisdiction entails the "traditional tag rule" and suggesting that a state registration law requiring a corporation to consent to jurisdiction operates like that procedure).

Playing tag would seem to unravel long-arm statutes like HRS § 634-35.  A state registration statute may preserve

9

jurisdiction over corporations conducting business in a state. But what about other businesses, shell companies, and individuals that do not enter or remain in a forum state?  See Shaffer v. Heitner, 433 U.S. 186, 200 (1977) ("The Pennoyer rules generally favored nonresident defendants by making them harder to sue.").

For now, plaintiffs and defendants are not playing tag like it's 1868.  Today, defendants must have minimum contacts with the forum state such that exercising jurisdiction over a defendant does not offend traditional notions of fair play and substantial justice.

First, plaintiffs must show purposeful availment. Purposeful availment occurs when a defendant purposefully directs activities toward the forum, or performs some act to invoke the benefits and protections of its laws.  In Interest of Doe, 83 Hawai'i 367, 374, 926 P.2d 1290, 1297 (1996).

Plaintiffs allege the law firms "played a central role in the creation and perpetuation of the conspiracy and the implementation of its fraudulent schemes throughout the United States."  Going nationwide though does not mean a defendant purposefully directs conduct at any particular state. Nationwide conduct does not blow an unpoppable jurisdictional bubble that follows plaintiffs wherever they go.  See J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 885-86

(2011) (explaining that a defendant's national conduct covering all states does not "establish[] that [the defendant] engaged in conduct purposefully directed at" any particular state.)  "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State."  Asahi Metal Indus. Co., Ltd. v. Super. Ct. of California, Solano Cnty., 480 U.S. 102, 112 (1987).

Plaintiffs' claims also do not arise out of or relate to the law firms' contacts with Hawai'i.  The law firms have no state contacts by themselves.  And any indirect contacts are not related to the cause of action.  "Relate to" incorporates real limits.  See Ford Motor Co., 141 S. Ct. at 1026.

The circuit court understood the problem traditional specific personal jurisdiction posed to hale the law firms into the Third Circuit.  Only conspiracy jurisdiction brought the law firms to Kona, the court ruled.

Next, we consider conspiracy jurisdiction.

### C.

Conspiracy jurisdiction is a type of specific jurisdiction. It allows a court to invoke jurisdiction over a conspiring out-of-state defendant.  If a co-conspirator takes sufficient action in the forum state, a defendant's own state contacts are immaterial.  The acts of a co-conspirator within a state may

11

support jurisdiction.  See In re Platinum & Palladium Antitrust Litig., 61 F.4th 242, 269 (2d Cir. 2023).

Commonly, specific personal jurisdiction based on conspiracy jurisdiction has three elements: "(1) a conspiracy (2) in which the defendant participated and (3) a co-conspirator's overt act within the forum, subject to the long-arm statute and in furtherance of the conspiracy."  Youming Jin v. Ministry of State Sec., 335 F. Supp. 2d 72, 78 (D.D.C. 2004) (cleaned up).

The law firms believe conspiracy jurisdiction violates the due process clause.  They say Walden v. Fiore, 571 U.S. 277 (2014) "undercut the very foundation of conspiracy jurisdiction."

In Walden, law enforcement officers stopped a man at the Atlanta airport.  They seized the man and his money before he boarded a flight home to Nevada.  571 U.S. at 279-81.  He sued the officers in Nevada, alleging they falsified affidavits to justify taking his property.  Id.  One officer (Walden) argued the court lacked personal jurisdiction over him since he did not have minimum contacts with Nevada.  Id. at 281.

Walden won.  Minimum contacts focus on the *defendant's* contacts with the state, not the plaintiff's contacts.  Id. at 284.  Walden's only connection to Nevada was knowledge the plaintiff lived there.  The "plaintiff cannot be the *only* link

between the defendant and the forum." Id. at 285 (emphasis added). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [them] to the forum in a meaningful way." Id. at 290.

Walden demands a defendant-focused inquiry. Like Ford Motor Co. and other personal jurisdiction cases, Walden fastens the inquiry to the *defendant's* contacts. "[I]t is the defendant, not the plaintiff or third part[y], who must create contacts with the forum State." Id. at 291.

Because of the "third party" language, the law firms argue that Walden precludes conspiracy jurisdiction. True, a defendant's relationship to a third party is insufficient. Courts may not exercise personal jurisdiction over a defendant based only on someone else's conduct. Yet Walden says nothing about a defendant who participates in a conspiracy that substantially targets a forum state – and knows it.

A co-conspirator isn't like a third party. Typically, a co-conspirator is a co-defendant. Co-conspirator relationships do not resemble a defendant's singular relationship with a plaintiff or a third party. A conspiracy needs conspirators. Co-conspirators join forces to achieve an objective. One co-conspirator may commit overt acts in a state, while another co-conspirator may not. "In a conspiracy, an individual's actions

13

in furtherance of the conspiracy are not unilateral because conspiratorial acts have at their foundation an agreement and the involvement of other co-conspirators." Santa Fe Techs., Inc. v. Argus Networks, Inc., 42 P.3d 1221, 1234 (N.M. Ct. App. 2001).

Co-conspirators resemble agents more than third parties. "[B]ecause a conspiracy is a type of agency relationship, an act taken during the course of a conspiracy relationship may lead to specific personal jurisdiction over a defendant." Raser Techs., Inc., by & through Houston Phoenix Grp., LLC v. Morgan Stanley & Co., LLC, 449 P.3d 150, 167-68 (Utah 2019). "[C]ivil co-conspirators, like criminal co-conspirators, act as agents of one other when engaging in acts in furtherance of their conspiracy." Mackey v. Compass Mktg., Inc., 892 A.2d 479, 495 (Md. 2006).

Comparing co-conspirators to agents is mistaken, the law firms contend. Defendants control agents, not necessarily their co-conspirators. We do not believe this distinction makes agency irrelevant to conspiracy jurisdiction. Walden recognized that an agent's in-state acts operate as a "relevant contact" for due process purposes. And an agent's acts are within the reach of Hawai'i's long-arm statute. See HRS § 634-35 (reaches those who act "in person or through an agent."). While

14

conspiracy and agency relationships are not exactly the same, they are closely related.

So no, Walden doesn't doom conspiracy jurisdiction. Rather, it keeps the jurisdictional analysis focused on what a defendant knew and did.

Post-Walden cases endorse conspiracy jurisdiction. For instance, in Nevada, the court parsed Walden and decided that conspiracy jurisdiction provides a basis for personal jurisdiction if the conspirators reasonably expect their actions to have consequences in the forum state. Tricarichi v. Coop. Rabobank, U.A., 440 P.3d 645, 653 (Nev. 2019). Utah also adopted conspiracy jurisdiction where "the defendant could have reasonably anticipated being subject to jurisdiction in the forum state because of [their] participation in the conspiracy." Raser Techs., 449 P.3d at 170. And Tennessee reinforced its pre-Walden position that conspiracy jurisdiction is a basis for specific jurisdiction. See First Cmty. Bank, N.A. v. First Tennessee Bank, N.A., 489 S.W.3d 369, 395 (Tenn. 2015).

After Walden, the Second Circuit kept conspiracy jurisdiction. The Supreme Court, it observed, has not "delineated when one conspirator's minimum contacts allow for personal jurisdiction over a co-conspirator." Charles Schwab Corp. v. Bank of America Corp., 883 F.3d 68, 86 (2d Cir. 2018). Plaintiffs satisfy due process if "(1) a conspiracy existed; (2)

15

the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state."  Id. at 87.

We hold that conspiracy jurisdiction satisfies due process principles when Plaintiffs plead, or upon challenge show, the defendant's knowledge or awareness of a co-conspirator's acts within the jurisdiction.  EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A., 246 F. Supp. 3d 52, 90 (D.D.C. 2017), aff'd, 894 F.3d 339 (D.C. Cir. 2018).

We endorse EIG's approach.  To establish conspiracy jurisdiction, a plaintiff must plead with particularity, or upon challenge show, the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy.  Id.  At a minimum, a plaintiff must show that the defendant knew their co-conspirator was carrying out acts in furtherance of the conspiracy in the forum.  Id. at 91.

Because of its defendant-centered focus, we believe a pleading and proof standard that requires the defendant's knowledge of a co-conspirator's overt acts in the forum state squares with precedent.  If a plaintiff shows that the defendant knew a co-conspirator was carrying out acts in furtherance of the conspiracy in the forum, then conspiracy jurisdiction satisfies federal due process.  Thus, we adopt conspiracy

16

jurisdiction with a knowledge requirement.  A plaintiff must: (1) allege that the defendant knew of the co-conspirator's acts in the forum; and (2) plead with particularity, or upon challenge show, the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy.

### D.

We hold that Hawai'i courts have jurisdiction to hear cases involving out-of-state defendants engaged in conspiracies that directly target our state.

Conspiracy jurisdiction allows a Hawai'i plaintiff to sue a conspiring, but far flung, defendant here.  It keeps our court doors open to those who allege international, national, and other conspiracies directed at Hawai'i.  It aligns with our state's spirit of access to justice.  Hawai'i courts should not shut to plaintiffs who properly allege a conspiracy where at least one defendant took substantial action in our state and the other defendants knew about it.

Sometimes, conspiracy jurisdiction may be the only way to establish jurisdiction over out-of-state defendants engaged in widespread conspiracies targeting a particular state.

Courts have invoked conspiracy jurisdiction to cover fraudulent schemes and scams.  Plaintiffs have used it to sue banks for conspiracy to price fix.  See, e.g., Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC, 22 F.4th 103, 123 (2d

Cir. 2021), cert. denied, 142 S. Ct. 2852 (2022). And in Ponzi schemes. See, e.g., Palumbo v. New Direction IRA, Inc., No. 6:19-cv-235 (GLS/TWD), 2020 WL 5045158, at *3 (N.D.N.Y. Mar. 27, 2020). Multi-state loan scams, too. See Galloway v. Martorello, No. 3:19-cv-314, 2023 WL 5183204, at *10 (E.D. Va. Aug. 11, 2023). Courts have also invoked conspiracy jurisdiction in multi-defendant tobacco litigation cases. See, e.g., Simon v. Philip Morris, Inc., 86 F. Supp. 2d 95, 120–21 (E.D.N.Y. 2000) (collecting cases).

Plaintiffs can recover damages from defendants who conspire to commit fraudulent acts in a forum state. If a person or company conspires to do unlawful things in Hawai'i and knows a co-conspirator is taking substantial steps here to advance those conspiratorial aims, then we believe our courts may invoke personal jurisdiction.

**E.**

Though we adopt conspiracy jurisdiction, the law firms win. The allegations against them, and the evidence offered by Plaintiffs at the HRCP Rule 12(b)(2) motion, fail to establish conspiracy jurisdiction.

Conspiracy jurisdiction does not mean anything goes. "[B]ald speculation" or "conclusionary statement[s]" do not establish conspiracy jurisdiction. See Naartex Consulting Corp. v. Watt, 722 F.2d 779, 787 (D.C. Cir. 1983).

18

Unlike the claims against the tobacco companies and retailers, Plaintiffs do not allege in the complaint that the law firms had any direct contacts in Hawai'i.  Rather, the complaint alleges the law firms puppet-mastered a conspiracy from afar.

Plaintiffs say that starting in the 1950s, the law firms conspired with the cigarette manufacturers "to conceal the health effects and addictive nature of smoking cigarettes" with the "ultimate goal" of maximizing their clients' "sale of cigarette products throughout the United States."  The complaint alleges that the law firms controlled research conducted by the manufacturers to prevent negative research from being published about cigarettes, "misdirected" efforts to focus on other causes of smoking-related diseases, identified and established relationships with "friendly" scientific witnesses, and engaged in document destruction and hiding of "negative industry documents behind the guise of work product privilege."

Plaintiffs level rangy accusations.  But nowhere do they claim the law firms *knew* of overt acts by co-conspirators specifically targeting Hawai'i, rather than the United States as a whole.  And the allegations, for instance the claim that the law firms were "engaged in a fraud directed nationally and at the State of Hawai'i," are conclusory.  See American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V., 710

F.2d 1449, 1454 (10th Cir. 1983) ("Mere allegations of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court.") (cleaned up).

An HRCP Rule 12(b)(2) motion to dismiss challenges a court's jurisdiction over a defendant. Plaintiffs have the burden to establish personal jurisdiction. Unlike Rule 12(b)(1) and 12(b)(6) motions to dismiss, the court does not have to accept a complaint's allegations as true. To counter a Rule 12(b)(2) motion, Plaintiffs may present specific and relevant evidence that connects the defendant with Hawai'i. See Shaw v. N. Am. Title Co., 76 Hawai'i 323, 327, 876 P.2d 1291, 1295 (1994) (plaintiffs must make a "prima facie showing of jurisdiction through [their] own affidavits and supporting materials"). The court resolves any factual variances to favor the exercise of specific personal jurisdiction. Id.

Plaintiffs opposed the law firms' Rule 12(b)(2) motions to dismiss. Plaintiffs claimed that the firms had direct contacts with Hawai'i. They devised fraudulent messages that spread through various print, radio, and broadcast media in Hawai'i. Plaintiffs submitted scattered exhibits. Some extend to the 1950s. Few mention the law firms. All fail to establish a sufficient connection between the law firms and Hawai'i.

The exhibits occasionally mention the law firms. For instance, exhibit A lists individuals who comprised the tobacco institute "Committee of Counsel." However, a document that namedrops the law firms or their attorneys offers no connection between the law firms and Hawai'i.

Some exhibits mention Hawai'i. Exhibit M is a 1980 advertisement. The small text reads in part: "C'mon up to KOOL, Hawaii's #1 cigarette family. . . . Right in step with Hawaii's cool taste."



OAHU-KOOL100.0001

Plaintiffs think the KOOL ad aids them. It shows marketing in Hawai'i. But there's no link to the law firms. Nothing indicates that any law firm shaped the advertisement's messaging, or otherwise knew that ads like this were run in Hawai'i.

Plaintiffs also provide a few exhibits about a research proposal at the University of Hawai'i looking at "a possible heredity factor in the tobacco smoking habit." Some documents include Shook meeting agendas that note the study. Sure, Shook paid attention to the study. But nothing shows that Shook had anything to do with the study, its funding, or that Shook took any action at all directed at Hawai'i.

We conclude Plaintiffs fail to establish personal jurisdiction. Their smattering of documents fail to show the law firms knew of a co-conspirator's targeted acts in the forum. The evidence presented to parry the jurisdictional attack does not demonstrate that the law firms conspired to direct fraudulent messages at Hawai'i.

The third circuit did not properly exercise personal jurisdiction over the law firms. Plaintiffs plead no facts, and offer no evidence, to show the law firms knew a co-conspirator's actions expressly targeted Hawai'i. See Cengiz v. Salman, No. 20-3009 (JDB), 2022 WL 17475400, at *11 (D.D.C. Dec. 6, 2022).

Courts do not have to accept inferences from plaintiffs that are unsupported by the facts. Livnat v. Palestinian Auth., 851 F.3d 45, 57 (D.C. Cir. 2017).

Representing a client is not enough. Absent allegations that a law firm operates in Hawai'i or that the firm knows of a co-conspirator's overt acts in Hawai'i to advance the conspiracy, a plaintiff's claim against a law firm is just an allegation about "out-of-state activity by out-of-state actors." Page v. Democratic Nat'l Comm., No. 20 C 671, 2020 WL 8125551, at \*4 (N.D. Ill. Aug. 17, 2020). A lawyer and client may be co-conspirators. See *Breaking Bad*: *Better Call Saul* (AMC television broadcast Apr. 26, 2009). But not here.

### F.

Next, we conclude that jurisdictional discovery is undeserved. Plaintiffs neither ask for jurisdictional discovery, nor dispute the law firms' argument that it's not warranted. "Jurisdictional discovery is only appropriate where the party seeking such discovery provides some specific indication regarding what facts additional discovery could produce that would affect the court's jurisdictional analysis." EIG Energy Fund, 246 F. Supp. 3d at 92 (cleaned up); see also Coal. for Mercury-Free Drugs v. Sebelius, 725 F. Supp. 2d 1, 5 (D.D.C. 2010), aff'd, 671 F.3d 1275 (D.C. Cir. 2012) (no

jurisdictional discovery when plaintiffs' request was not "narrowly tailored" to produce relevant information).

### G.

Extraordinary writs are appropriate in extraordinary circumstances. Exceeding jurisdiction, committing a "flagrant and manifest abuse of discretion," or "refus[ing] to act on a subject properly before the court under circumstances in which it has a legal duty to act," are court actions and inaction that may constitute extraordinary circumstances to issue a writ. Kema v. Gaddis, 91 Hawai'i 200, 205, 982 P.2d 334, 339 (1999).

A petitioner must "demonstrate[] a clear and indisputable right to the relief requested and a lack of other means to redress adequately the alleged wrong or to obtain the requested action." Id. at 204, 982 P2d at 338. These conditions operate to preserve a case's usual progression.

A rule 12(b)(2) motion to dismiss is not an infrequent filing. But it rarely results in a writ. The clear and indisputable right to relief and normal appellate process requirements typically push a jurisdictional challenge outside a writ's ambit. Pre-final judgment, this court has hardly ever taken jurisdiction over a case where a party wants to writ the trial court because it believes the court has exceeded its jurisdiction. Indeed, the parties only cite two early-statehood cases covering jurisdictionally-inspired writs. See e.g.,

<u>Victory Carriers, Inc. v. Hawkins</u>, 44 Haw. 250, 254, 352 P.2d 314, 317 (1960) (explaining that "if it appears from the record that the trial court is without jurisdiction over the person of the defendant and relator, prohibition will lie to prevent the court from further proceeding in the action."); <u>Atlas Elevator Co. v. Presiding Judge of Cir. Ct. of First Cir.</u>, 49 Haw. 129, 412 P.2d 645 (1966).

Until now, this court has not considered conspiracy jurisdiction. Because the law firms' petition advanced a new and extraordinary situation, we accepted it.

We hold that the circuit court clearly and indisputably exercised jurisdiction beyond its authority and there were no other means for the law firms to adequately address the alleged wrong or to obtain dismissal.

The firms are entitled to relief. A contrary ruling would subject the law firms to the very due process violations that settled personal jurisdiction law aspires to avoid. <u>See</u> <u>Atlas</u>, 49 Haw. at 144, 412 P.2d at 655.

Plaintiffs may still sue the law firms, just not in Hawaiʻi. Perhaps Plaintiffs will successfully show that the law firms "stopped being counsel and became co-conspirators" and that they "were instrumental in carrying out the conspiracy to misrepresent the health effects and addictive nature of smoking

cigarettes." But that's a question for a court that has personal jurisdiction over the law firms.

## IV.

The court grants the law firms' writ of prohibition. We direct the Circuit Court of the Third Circuit to dismiss with prejudice the law firms as defendants.

<div style="display:flex">
<div>

Geoffrey Michael
(Edmund K. Saffery, Deirdre
Marie-Iha, Thomas J. Hughes,
David M. Louie, Nicholas R.
Monlux, Lincoln S.T. Ashida,
Thomas Benedict on the briefs)
for petitioners

Phillip Holden
(Wayne Parsons, Sergio Rufo,
Alejandro Alvarez on the briefs)
for respondents Marvin Manious
and Valerie Manious

Melvyn M. Miyagi, Ross T.
Shinyama, Lisa M. Yang, Rihui
Yuan, W. Randall Bassett,
Spencer M. Diamond, Philip R.
Green
(on the briefs)
for respondent R.J. Reynolds
Tobacco Company

David M. Louie, Nicholas R.
Monlux, Lincoln S.T. Ashida
(on the briefs)
for respondent Philip Morris
USA, Inc.

</div>
<div>



/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ John M. Tonaki

/s/ Clarissa Y. Malinao



</div>
</div>